[No. 1397.]

IDA L. GARDNER AND J. H. GARDNER, PLAINTIFFS AND APPELLANTS, *v.* ZADOCH PIERCE, DEFENDANT AND RESPONDENT.

1—RECORDS—NOTICES BY.—The laws of Nevada import notice to all persons of the contents of duly recorded instruments.

2—ESTOPPEL BY SILENCE.—The ground upon which estoppel by silence proceeds is in all respects governed by the same principles as estoppel by declarations or statements, and is based upon fraud, actual or constructive, on the part of the person sought to be estopped. *Held*, that in absence of proof that respondent intended to deceive appellants, no estoppel is made out against him.

3—ESTOPPEL—PARTY RELYING UPON MUST SHOW DILIGENCE, ETC., ON HIS OWN PART.—A party setting up and relying upon an estoppel is himself bound to show the exercise of due diligence and good faith on his own part in his endeavor to ascertain the truth of statements upon which he claims to have relied and acted.

4—DILIGENCE—WHAT IS—QUESTION OF FACT FOR COURT OR JURY.— What is reasonable diligence on the part of a party seeking to establish an estoppel against another, is a question of fact to be ascertained and passed upon by the court or jury after taking into consideration all the circumstances of the case.

APPEAL from the District Court, Ormsby county; *Richard Rising*, District Judge.

The facts are shown in the opinion.

*Trenmor Coffin*, for Appellants:

Plaintiffs, with the knowledge of defendant, were in possession of the land under a deed from parties, who, together with their grantors, had been in possession of it for more than fifteen years.

Defendant contributed to the information which led plaintiffs to believe that their grantors had the right to sell and convey. The case is clearly within the rule of all decisions on the subject of equitable estoppel. Judgment was for defendant; it should have been for plaintiffs. (*Sharon* v. *Minnock*, 6 Nev. 386, *et seq.* and authorities there cited; *Godfrey* v. *Caldwell*, 2 Cal. 487; *Hostler* v. *Hays*, 3 Cal. 303; *Parke* v. *Kilham*, 8 Cal. 77; *Bryan* v. *Romercz*, 8 Cal. 462; *Mitchell* v. *Reed*, 9 Cal. 404; *McGee* v. *Stone*, 9 Cal. 600; *Bleven* v. *Freer*, 10 Cal. 172; *Snodgrass* v. *Ricketts*, 13 Cal. 360; *Carpenter* v. *Thurston*, 24 Cal. 370; *Davis* v. *Davis*, 26 Cal. 23; *Bowman* v. *Cudworth*, 31 Cal. 149; *Martin* v. *Zellerback*, 38 Cal. 300; *Quirck* v. *Thomas*, 6 Mich. 78; *Horn* v. *Cole*, 51 N. H. 287, and authorities cited.)

The testimony shows that plaintiffs and their grantors had been in open, notorious, adverse peaceable possession of the land for more than fifteen years, with the knowledge and acquiescence of defendant.

The findings of the court in this case cannot be accounted for except upon the supposition that the learned judge who made the findings either entirely overlooked or ignored the whole doctrine of equitable estoppel *in pais*, than which no doctrine is more firmly founded upon nor more strongly entrenched behind the fundamental principles of equity.

*Torreyson & Summerfield*, for Respondent:

To justify a court of equity in subordinating the record title of lands to an equitable title founded only upon a claim of estoppel *in pais*, the proofs should be clear, convincing and decisive. (*Bryan* v. *Ramirez*, 8 Cal. 468.)

Evidence of estoppel *in pais* should be carefully scruti-

nized, as it is a dangerous species of evidence liable to abuse. (*Davis* v. *Davis*, 26 Cal. 24.)

" The protection which the law gives to those holding titles or security upon land upon the faith of records, should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming their protection, and a clear equity in him who seeks to establish a right in hostility to him."    (*Brown* v. *Volkening*, 64 N. Y. 821.)

Bigelow, in his excellent treatise on Estoppel, 3d ed., 484, enumerates five distinct elements, and concludes that *all* of them must actually or presumably be present in order to sustain an estoppel *in pais.*    Thus:

(*a*) "There must have been a false representation or a concealment of material facts."

(*b*) "The representation must have been made with knowledge of the facts."   An estoppel *in pais* cannot be relied upon by the party claiming its benefit unless he proves that the party making the representation had actual or constructive knowledge that the other party at the time intended to act upon it.   (*Andrews* v. *Lyons*, 11 Allen, 351; Bigelow Est., 3d ed., 529.)

The party making admissions or representations must, at the time, know the true state of his own title to be estopped. (*Smith* v. *Penny*, 44 Cal. 161; *Davenport* v. *Turpin*, 43 Cal. 597; *Martin* v. *Zellerback*, 38 Cal. 300; *Davis* v. *Davis*, 26 Cal. 23.)

(*c*) "The party to whom it was made must have been ignorant of the truth of the matter."   Parties are estopped from claiming ignorance.   (*Biddleboggs* v. *Merced Mg. Co.*, 14 Cal. 368; 26 Cal. 23; 38 Cal. 300; 44 Cal. 161; *Brant* v. *Virginia Coal & Iron Co.*, 95 U. S. 337; Bigelow on Est., 3d ed., 541.)

Equity will not aid the negligent.   Appellants were so culpably negligent that they not only failed to make or cause to be made any search of the records, but never made any inquiries to learn who was the owner of the land.

(*d*) "It must have been with the intention that the other party should act upon it."

(*e*) "The other party must have been induced to act upon it."   Only parties and their privies are bound by the representation, and only those to whom the representation was made or whom it was intended to influence and their privies,

may take advantage of the estoppel. (*Kinney* v. *Whiton*, 44 Conn. 272; *Townsend Sv. Bank* v. *Todd*, 47 Conn. 190; *Mayenberg* v. *Haynes*, 50 N. Y. 75; *Morgan* v. *Spangler*, 14 Ohio St. 102; *Harvey* v. *West*, 13 S. E. Rep. 693; Big. on Est., 3d ed., 508.)

It is true that in a case relating to personal property the supreme court of California (*Mitchell* v. *Reed* 9 Cal. 204) has taken a different view, but that decision is in conflict with the great weight of authority, and is expressly disapproved in *Kinney* v. *Whiton*, 44 Conn. 272.

Appellants could have easily, readily and conveniently ascertained in whom the title to the land rested by examining the record. Standing by in silence will not estop a man from asserting his title when it is of record in the proper office, unless he has done some *affirmative act* to mislead the other party, and equity imposes no duty of speaking in such case. (*Ferris* v. *Coover*, 10 Cal. 590; *Boles* v. *Perry*, 51 Me. 449; *Mason* v. *Philbrook*, 70 Me. 57; *Ice* v. *Dewey*, 54 Barb. 455; *Mayo* v. *Cartwright*, 30 Ark. 487; *Sulphine* v. *Dunbar*, 55 Miss. 255; *Kingman* v. *Grahan*, 51 Wis. 232; *Kneuff* v. *Thompson*, 16 Pa. St. 357; *Markham* v. *O'Connor*, 52 Ga. 183; Big. on Est., 3d ed., 502.)

Silence does not estop unless it operates as a fraud. (*Stockman* v. *Riverside Co.*, 64 Cal. 57; *Stone* v. *Bumpus*, 40 Cal. 428; *Kelly* v. *Taylor*, 23 Cal. 15.)

The authorities cited by appellants, with the exception of *Mitchell* v. *Reed*, 9 Cal. 404; 6 Mich. 78, and 51 N. H. 287, sustain respondent's contention in this action, notably so the case of *Sharon* v. *Minnock*, 6 Nev. 386.

Respondent most earnestly urges that the pretenses of appellants are too flimsy in character, are too palpably insincere and are too utterly devoid of equity to justify a court in destroying a record title of ten years' standing.

*Trenmor Coffin*, in reply, for Appellants:

It is not denied that a Nevada state patent issued to Zadoch Pierce was on record in the office of the secretary of state. Such record is not made notice by the law of anything to anybody. It is not denied that such patent was on record in Lyon county, but there is nothing in the record to

show that any portion of the land described in plaintiff's complaint is embraced in the patent.

. The text of Bigelow on Estoppel, and very numerous authorities cited in support of the text, seem to place all constructive notice, by record or otherwise, in a lower or subordinate rank to estoppel *in pais.* It seems that one may rely absolutely upon the words and conduct of another without making further inquiry, and as against the person whose words and conduct are relied upon no record or fact to the contrary will prevail.

Having heard the words of respondent, and observed his conduct, appellants were not required to seek to discredit him either by record or parole. (Bigelow on Est., chap. XVIII, 2d ed., especially pp. 452, 458–60, and authorities cited.)

. " False representation, if relied upon by a party ignorant of the truth, may create an estoppel in his favor, although he had constructive notice of their falsity by matter of record." One who claims the benefit of an estoppel on account of representations made must show that he was ignorant of the truth and acted upon the false representations; but to defeat the estoppel on that ground actual and not constructive knowledge is necessary. The very representations relied upon may have caused the party to desist from inquiry and neglect his means of information, and it does not rest with him who made them to say that their falsity might have been ascertained, and it was wrong to credit them. To this principle many authorities might be cited. (93 Ind. 480; 47 Ark. 335; Big. on Est., 627; 103 Mass. 103; 38 Mo. 55; 58 Miss. 30; 19 Minn. 32; 55 Kan. 296; 29 Am. St. Rep. 40; 100 U. S. 578; 101 U. S. 494–99; 102 U. S. 69; 8 Cir. (Mo.), 11 Fed. Rep. 31; 3 McCreary, 507; 14 Ohio St. 414; 84 Am. Dec. 405; 30 N. Y. 519; 86 Am. Dec. 406–11; 48 Mo. 325; 8 Am. Rep. 104; 5 Call (Va.) 463; 2 Am. Dec. 593; 2 Yerger (Tenn.) 394; 24 Am. Dec. 492; 1 Blackford (Ill.) .150; 12 Am. Dec. 217; 13 Pa. St. 376; 53 Am. Dec. 482; 19 . Ala. 430; 54 Am. Dec. 194; 15 Mo. 296; 55 Am. Dec. 143; 21 Conn. 451; 56 Am. Dec. 371; 2 Cal. 489; 56 Am. Dec. 360; .5 La. An. 367; 52 Am. Dec. 367; 11 Pa. St. 419; 51 Am. Dec. 559; 8 Cal. 461; 68 Am. Dec. 310; 40 Me. 348; 63 Am. Dec. 665; 38 Cal. 300; 99 Am. Dec. 365; 41 Ga. 162; 5 Am. Rep. 526;

49 Mo. 231; 8 Am. Rep. 129; 51 N. H. 116; 12 Am. Rep. 67; 93 Ind. 570; 47 Am. Rep. 394; 69 Tex. 38; 5 Am. St. Rep. 23; 84 Ala. 570; 5 Am. St. Rep. 401; 31 S. C. 153; 17 Am. St. Rep. 22; 77 Mich. 625; 18 Am. St. Rep. 424; 47 Kan. 340; 27 Am. St. Rep. 288–93; 94 Ala. 170; 33 Am. St. Rep. 105.)

Although appellant Ida L. Gardner testified that respondent never told her that he had traded the land or agreed to trade it, it is not disputed that he told many others so and that his declarations came to her knowledge. This was sufficient to operate as an estoppel the same as if the statements had been made directly to her. (*Mitchell* v. *Reed*, 9 Cal. 404, cited and followed in *Horne* v. *Gale*, 51 N. H. 287–94, and authorities cited.)

The record of respondent's patent could not affect appellants'· title nor the estoppel which respondent has raised up in favor of appellants and against himself. (*Sharon* v. *Minnock*, 6 Nev.·378, 90, 91; *McCabe* v. *Gray*, 20 Col. 516; *Long* v. *Dollarhide*, 24 Cal. 227.)

It is not understood to be necessary in order to work an estoppel *in pais* that the statements or conduct of a party must be directly addressed to or intended to deceive the very person who is deceived and afterwards invokes the estoppel, but that it is sufficient if one acts upon them as a reasonable person would reasonably act, and is thereby misled to his prejudice. (*Trustees* v. *Smith*, 118 N. Y. 634; *Mitchell·* v. *Reed*, 9 Cal. 204; 70 Am. Dec. 647; 14 Mo. 482; 55 Am. Dec. 113–118; 8 Cal. 461; 43 N. H. 282; 12 Am. Rep. 111; 85 Am. Dec. 445; 90 Am. Dec. 462.)

It is not more the statements and conduct of respondent before and at the time of Mrs. Gardner's purchase that estops him, than it is his conduct while she was making the improvements. (118 N. Y. 634; 6 Nev. 378; 35 Vt. 218; 2 Cal. 489; 56 Am. Dec. 362; 3 Cal. 303; 8 Cal. 78; 8 Cal. 468; 9 Cal. 600; 31 Cal. 149; 93 Ind. 570; 47 Am. Rep. 394.)

The preponderance of authority supports *Mitchell* v. *Reed*, 9 Cal. 204, at least in as great a proportion as shown in 44 Conn., that of three to one.

Respondent, by trading or exchanging or agreeing to trade or exchange lands with Lee and Sanders and making public declaration thereof by changing the public highway to conform to the exchange by taking possession of and fencing the

land, etc., held out Lee and Sanders to the world as the
owners thereof, and is now estopped to allege to the contrary
as against appellants who have dealt with them as such
owners. (47 Kan. 340; 27 Am. St. 288, 93; 88 Mo. 418; 57
Am. Rep. 424; 2 Am. St. Rep. 170; 13 Am. St. Rep. 184; 90
Am. Dec. 460–62; 118 N. Y. 633; 129 Ill. 657; 139 Pa. St.
1–11; 15 Am. Dec. 217.)

Concerning motion for a new trial, *vide* sec. 197, civil prac-
tice act, as amended. (Stats. 1893, p. 88.)

By the Court, MURPHY, C. J.:

This is an action to quiet the plaintiffs' title to certain real
estate situated in Smith valley, Lyon county, Nevada, con-
sisting of two acres, described in the complaint, upon which
the plaintiffs have filed a declaration of homestead. In the
complaint it is averred that the plaintiffs are husband and
wife. That Ida L. Gardner purchased the land described in
the complaint from W. H. Lee and William Sanders on the
14th day of February, 1891, paid the sum of $50, the price
thereof, and took a deed therefor in her own name, and has
been in the actual possession of the same since said date, and
made improvements thereon to the value of $1,200 in build-
ings and fences; and it is alleged that the plaintiff Ida L.
Gardner and her grantors have been in the continuous,
open, peaceable, notorious possession of said land adverse to
all the world, and claiming title thereto, for more than fifteen
years last past.

The defendant, by his answer, denies that the plaintiff Ida
L. Gardner or her grantors are now, or ever were, the owners
of, in the possession of, or entitled to the possession of the
land described in the complaint, except upon certain con-
ditions, set forth in the answer, which conditions had not
been complied with; denies the value of the improvements;
and alleges that he is now, and has been since the 6th day
of September, 1883, the owner, in the possession, and entitled
to the possession, of the land in controversy, by virtue of a
patent issued to him by the State of Nevada to the land on
said last mentioned date; and that, when the plaintiffs
entered upon said land, they did so without the consent of
the defendant, and with full knowledge of his ownership, and
possession of said land.

We glean from the record the following facts:  W. H. Lee and William Sanders, and their grantors, being the owners of and claiming a large tract of land adjoining the land of the defendant, inclosed the same, or a part thereof, with a stone fence.  At the time of constructing this fence the lines of the legal subdivisions in accordance with the United States surveys were not known to the parties who caused the fence to be built.  After the landowners in that section of country had familiarized themselves with the lines of the legal subdivisions, it was found that the grantors of Lee and Sanders had inclosed a small portion of defendant's land—that portion now in dispute.  In 1890 this defendant entered into a verbal agreement with W. H. Lee, for the firm of Lee & Sanders, in which Lee & Sanders agreed to furnish this defendant with an abstract of title, and give him a deed to a strip of land situated across the road from the defendant's house, and upon the furnishing of the abstract of title and the giving of the deed by Lee & Sanders to the piece agreed upon this defendant was to deed to Lee & Sanders the land within their inclosure, and now in controversy.  Lee & Sanders have not complied with their part of that agreement, and the defendant avers on information and belief that Lee & Sanders are not now, and never were, the owners of the land for which they had agreed to give this defendant a good and clear title.

The appellants contend that, notwithstanding the facts are as above stated, yet, by reason of the fact that Pierce, the defendant, while in conversation with a number of persons at Wellington's—J. H. Gardner, one of the plaintiffs, being present—stated "that he had traded the land described in the complaint to Lee and Sanders for another piece of their land, and that the land belonged to Lee and Sanders," coupled with the fact that the defendant stood by, saw the improvements being made, and never asserting ownership, or objecting to the expenditure of money on the improvements, he is now estopped from claiming the land, or any interest therein.  The dwelling house of the plaintiffs is not upon the land in dispute; the barn, outhouses and other improvements are, and are estimated to be of value of $400.  The principle of the law is that he who, by his language or conduct, leads another to do what he otherwise would not have done, shall

not subject such person to loss or injury by disappointing the
expectations upon which he acted.   This rule has its justifi-
cation in the justness of preventing the accomplishment of
fraud.   It consists in holding for truth a representation acted
upon, when the person who made it seeks to deny its truth,
and deprive the party who has acted upon it of the benefit
obtained.   But, in order to justify the interposition of a court
of equity to enforce an estoppel *in pais*, it is necessary to
establish by very clear proof not only the fact of representa-
tions being made as alleged, but that they were false, and
were made with the intent that they should be acted upon.
(1 Story, Eq. Jur. 191, 192.)  And a party setting up and rely-
ing upon an estoppel is himself bound to show the exercise of
due diligence and good faith in his endeavor to ascertain the
truth of the statements made, and upon which he claims to
have relied and acted; and what is reasonable diligence is a
question of fact to be passed upon by the court or jury after
taking into consideration all the circumstances of the case.

In some cases he might rely upon the representations or
acts of the party to be estopped, without any inquiry what-
ever; while in others it would be gross negligence and a want
of good faith not to require of the party relying upon the
estoppel to make use of the means he has at hand to ascer-
tain if the statements he has heard, and upon which he is
about to act, were true; and especially should this be the
rule when the controversy relates to real estate.   In the case
under consideration there is nothing in the record showing,
or tending to show, that Pierce made the statement or repre-
sentation imputed to him with the intention to deceive or
defraud the plaintiffs, or that they would act upon it.   It
does appear from the transcript that he was not aware that
the plaintiffs were about to purchase the land until long
after they had purchased, and commenced making improve-
ments.   It is also in evidence that the plaintiffs were neg-
ligent in not inquiring into the true title of their grantors.
The plaintiff Ida L. Gardner admits that she knew nothing
about the ownership of the property except what her hus-
band told her.  J. H. Gardner, her co-plaintiff, testified that
he had heard defendant Pierce say, at a public meeting at
Wellington's, that he had traded the land to Lee & Sanders
for a piece of their land; that Lee & Sanders now owned the

land described in the complaint; that he afterwards saw Pierce cleaning the land. But Pierce's testimony on this point, in substance, is that he agreed to trade the land to Lee & Sanders for another piece of land, provided they furnished him with a good title to the land that he was to receive in exchange; and that he is now ready to carry out his part of the agreement, but he is informed and believes that Lee & Sanders are not now, and never were, the owners of the land. The testimony being conflicting, we must presume that the trial court adopted the statements made by the defendant. Appellants contend that, Pierce having stood by and seen them making their improvements, and not notifying them of his title, he is now estopped to assert it; or, putting it in another form, they invoke the doctrine that a person remaining silent when he ought, in the exercise of good faith, to have spoken, will not be allowed to speak when he ought, in the exercise of good faith, to remain silent. The ground upon which the estoppel by silence proceeds is in all respects governed by the same principles as estoppel by declarations or statements, and is based on fraud, actual or constructive, on the part of the person sought to be estopped.

The laws of this state import notice to all persons of the contents of duly recorded instruments. Upon this subject, Bigelow on Estoppel, at page 502, says: "In like manner it is settled law that standing by in silence will not bar a man from asserting a title of record in the public registry or other like office, so long as no act is done to mislead the other party. There is no duty to speak in such a case. * * * It follows that it is not enough to raise an estoppel that there was an opportunity to speak, which was not embraced. There must have been an imperative duty to speak." Also pages 519 to and including 524, 541, 594. The facts in this case are altogether insufficient to create an estoppel against the defendant.

The judgment and order appealed from are affirmed.