HILT TRUCK LINES, INC., A CORPORATION, APPELLANT, V. RAJEAN W. JONES ET AL., APPELLEES.

281 N. W. 2d 399

Filed July 17, 1979.  No. 42310.

Baylor, Evnen, Baylor, Curtiss & Grimit, for appellant.

William E. Pfeiffer and Thomas Wm. Weingarten of Spielhagen, Pfeiffer & Miller and John R. Doyle of Doyle & Doyle, for appellees.

Heard before KRIVOSHA, C. J., McCOWN, BRODKEY, and HASTINGS, JJ., and STUART, District Judge.

McCOWN, J.

This is a workmen's compensation proceeding initiated by the plaintiff to determine the rights and liabilities of the parties in connection with the accidental death of a truckdriver in the course of his employment. The single judge of the Workmen's Compensation Court determined that the plaintiff, Hilt Truck Lines, Inc., was the employer and awarded death benefits to the decedent's widow and his three minor children. Upon rehearing, the full panel of the Workmen's Compensation Court affirmed the findings and award of the single-judge court, and the plaintiff has appealed.

The decedent, Kenneth Youan Jones, also known as Kenneth Troy Cook, was a truckdriver who began using the name Kenneth Youan Jones sometime in the summer of 1976, and obtained a Nebraska

driver's license in that name. In early October 1976, Jones applied to defendant, Robert A. Thurston, in Lincoln, Nebraska, for a truckdriver's job in response to a newspaper advertisement. Thurston owns several tractor units which he leases with drivers to the plaintiff, Hilt Truck Lines, Inc.

In his interview with the decedent, Thurston informed Jones that Jones could not be hired until he had been screened and approved by plaintiff, Hilt Truck Lines, Inc. Thurston inquired as to Jones' accident and driving records and was assured by Jones that he had extensive experience, no convictions for traffic violations, no accident record, and that his operator's license had never been suspended or revoked. With these assurances, Thurston sent Jones to the plaintiff Hilt to apply. At the Hilt offices the decedent filled out an application form, signing his name as Kenneth Youan Jones. At no time did he ever tell Thurston or Hilt that he had previously used the name Kenneth Troy Cook, nor that he had a driving record under any name other than Kenneth Youan Jones. He also completed a standardized Department of Transportation test and completed a driver's certification of violations form on which he certified that he had no traffic violations during the preceding 12 months. The certification was dated October 6, 1976. Jones was then approved as a driver by Hilt.

Upon clearance by Hilt, Thurston accompanied Jones on his first trip to make sure that Jones was capable and to check him out on all appropriate procedures. Jones' performance on the checkout run was satisfactory and thereafter Jones drove the truck by himself on trips for Hilt.

Under Thurston's lease of trucks with drivers to Hilt, Thurston had power to hire and fire drivers, but had no control over drivers when they were on the road. Hilt held all permits, provided cargo and cargo trailers, arranged for trips, and operated all

trucks under its own authority and its own permits. The lease also specifically provided that Hilt was to provide workmen's compensation coverage for the drivers.

On October 25, 1976, Jones left Nebraska to deliver a cargo in New Jersey. He was returning with a cargo of liquor westbound on Interstate Highway No. 80 in Pennsylvania on the night of October 30, 1976. The Pennsylvania state patrol received a report of a truck accident by C. B. radio at 10:40 p.m., on that date. A state trooper arrived at the scene at 11:15 p.m., and found a tractor-trailer with its cargo and parts of the vehicle scattered over a wide area. The truck had struck the guardrail on the right side of the highway, skimmed along the rail for approximately 300 feet, broken through the rail, and traveled another 246 feet. Only the rear doors of the trailer were left intact. The cab was twisted beyond recognition and Kenneth Youan Jones was lying near the cab apparently dead. He was pronounced dead upon arrival at the hospital.

At the point of the accident the highway was blacktop with a downhill curve to the right. There was no lighting and there was light rain and fog, although visibility was termed adequate. The highway was wet from the rain. The state trooper testified there had been a number of accidents involving trucks at that spot caused by excessive speed and loss of control. In the trooper's opinion, the accident in this case was caused by speeding and driving too fast for the road and weather conditions present.

A blood sample taken from the decedent's body at 12:45 a.m., October 31, 1976, showed a blood alcohol level of .165 percent. Rajean Jones, the decedent's widow, testified that Jones had called her by telephone from Pennsylvania at approximately 10 p.m., on October 30, 1976, and talked with her for some time. His voice sounded normal, he talked distinctly, and did not slur his words. Her testimony was

confirmed by the person who answered the telephone at the Jones' residence.

An expert witness testified that in his opinion a blood alcohol level of .165 percent would have impaired and interferred with the physical and mental functions necessary to operate a motor vehicle. The expert testified that an individual's hand-eye coordination and judgment would have been impaired, along with his distance and time perception, and that he would have had decreased control of his body and mind. The expert admitted, however, that he did not know Kenneth Youan Jones, and that there was a difference in reaction to alcohol between individuals and also between persons who chronically abused alcohol and those who did not. He also testified that even at the same blood alcohol level the effects of alcohol vary from person to person, and that with a blood alcohol level of .165 percent a person could still operate a motor vehicle without driving off the road.

Under Department of Transportation regulations, Hilt had 30 days after hiring Jones in which to complete its investigation of his application and driving record. At the time of Jones' death 24 days had expired and none of the requests for the decedent's motor vehicle reports had been returned. After Jones' death it was discovered that he had a previous driving record under the name of Kenneth Troy Cook. The investigation also disclosed that the decedent, under the name of Kenneth Troy Cook, had been convicted in Michigan on a charge of driving while intoxicated on April 24, 1974. He had also been convicted in Colorado under the name of Cook for driving under the influence of alcohol on October 22, 1975. In addition, the decedent, under the name of Kenneth Troy Cook, had been convicted in Nebraska on February 10, 1976, for driving while intoxicated. The evidence was undisputed that if Hilt or Thurston had known of any of these convictions or misrepre-

sentations the decedent would not have been employed, and that if they had been discovered prior to the accident Jones would have been discharged immediately.

The Workmen's Compensation Court found that the decedent, Kenneth Youan Jones, also known as Kenneth Troy Cook, was in the employ of the plaintiff, Hilt Truck Lines, Inc., on October 31, 1976, and that he suffered fatal injuries and died as a result of an accident in the course of his employment. The Workmen's Compensation Court also determined that his dependents, Rajean W. Jones, widow, and his minor children by a previous marriage, Kenneth Troy Jones, Renise Kay Jones, and Todd Alan Jones, are entitled to dependents' benefits under the Nebraska Workmen's Compensation Act.

The Workmen's Compensation Court also found that the decedent, in applying for employment, misrepresented his traffic violations and accident record, and failed to disclose that he had previously used the name of Kenneth Troy Cook, and that plaintiff would not have accepted decedent for employment if it had known of his driving record. The court determined that there was insufficient evidence to raise or support an inference of a causal connection between the false representations and the subsequent accident, and that the evidence is legally insufficient to void the employment relationship retroactively.

The court also found that the plaintiff had failed to meet its burden of proving the defense of intentional willful negligence or intoxication, and entered judgment against the plaintiff and in favor of the decedent's dependents for the appropriate death benefits. The plaintiff has appealed.

The plaintiff's primary contentions on this appeal are that because of the decedent's misrepresentations at the time of his employment, the employment contract was void ab initio; and that the decedent's

dependents are not entitled to benefits because the decedent's death was caused by his willful negligence or intoxication.

Plaintiff concedes the general rule that false statements made at the time employment was secured are ordinarily insufficient to terminate the relation of master and servant existing at the time of the injury, even though they may constitute grounds for rescinding the contract of employment, at least where there is no causal connection between the injury and the misrepresentation. See 56 C. J. S., Master and Servant, § 180 (e), p. 872. Plaintiff relies on a related rule that a contract obtained by fraud through another impersonating the employee will bar recovery in an action by the employee for personal injuries. The difficulty with that rule here is that the decedent did not impersonate anyone, and there was no assumption by the plaintiff that Jones was anyone but himself.

The general rule is set out in 1 B Larson, Workmen's Compensation Law, section 47.53, page 8-201: "[I]t has been held that employment which has been obtained by the making of false statements—even criminally false statements—whether by a minor or an adult, is still employment; that is, the technical illegality will not of itself destroy compensation coverage. * * * The following factors must be present before a false statement in an employment application will bar benefits: (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury."

In the case now before us, the Workmen's Compensation Court specifically found that there was insufficient evidence to raise or support an inference

of a causal connection between decedent's misrepresentations and his subsequent accident. Obviously, issues of causation are for determination by the factfinder. Hyatt v. Kay Windsor, Inc., 198 Neb. 580, 254 N. W. 2d 92. Although it is quite clear from the findings of fact here that the contract of employment was voidable or subject to rescission upon discovery of the misrepresentations, the employment contract was not void from the beginning and the misrepresentations did not destroy compensation coverage.

As an affirmative defense the plaintiff alleged that the decedent's dependents were not entitled to workmen's compensation benefits because the decedent's death was caused by his intoxication or willful negligence.

Section 48-127, R. R. S. 1943, provides: "If the employee is injured by reason of his intentional willful negligence, or by reason of being in a state of intoxication, neither he nor his beneficiaries shall receive any compensation under the provisions of this act."

In a workmen's compensation case the burden of proof on the defense of intoxication or willful negligence is on the employer. See, Johnson v. Hahn Bros. Constr., Inc., 188 Neb. 252, 196 N. W. 2d 109; Hoff v. Edgar, 133 Neb. 403, 275 N. W. 602.

In the present case the employer was required to prove that the accident and resulting death of the decedent were caused by decedent's intoxication, and the evidence on this issue is in conflict. Issues of causation are for the factfinder to determine and the Workmen's Compensation Court specifically found that the evidence was insufficient to establish that the accident and the resulting death of the decedent were caused by intoxication.

The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. § 48-185, R. R. S. 1943.

The findings of fact made by the Workmen's Com-

pensation Court after rehearing will not be set aside on appeal unless clearly wrong. In testing the sufficiency of the evidence to support findings of fact made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom. Hyatt v. Kay Windsor, Inc., *supra*.

The findings of fact made by the Workmen's Compensation Court on rehearing here were supported by the evidence and the judgment of the court was correct and is affirmed.

AFFIRMED.