674 F.2d 248
 NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,
v.
Jasper J. HALL, Jr. and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 81-1674.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 5, 1982.
Decided March 22, 1982.
 
 Lawrence P. Postol, Washington, D. C. (Junius C. McElveen, Jr., Clifford J. Zatz, Myra C. Selby, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for petitioner.
 Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Marianne Demetral Smith, U. S. Dept. of Labor, Washington, D. C., on brief), for Federal respondent, OWCP.
 Richard B. Donaldson, Jr., Newport News, Va. (Jones, Blechman, Woltz & Kelly, P. C., Newport News, Va., on brief), for respondent, Jasper J. Hall, Jr.
 Before INGRAHAM,* Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.
 INGRAHAM, Senior Circuit Judge.
 
 
 1
 Petitioner Newport News Shipbuilding and Dry Dock Company seeks review under 33 U.S.C. § 921(c) (1976) of an award of compensation benefits to Respondent Jasper Hall under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (1978 and Supp.1981). The agency respondent is the Director of the Office of Workers' Compensation Programs, United States Department of Labor. The sole question presented is whether an employee is barred from receiving compensation for an employment-related injury because he misrepresented his medical history on his initial employment application, the employer relied on such misrepresentation, and the subsequent injury was causally related to the concealed prior history. An administrative law judge found no provision in the Act relieving an employer of liability in such circumstances and awarded benefits. The Benefits Review Board, one member dissenting, upheld the award. We affirm.
 
 I. Facts
 
 2
 Respondent Hall applied for a job with petitioner on October 11, 1976. On that day he completed an Employment Application in which he stated that he had no physical defects and had never received compensation for an injury or accident, work-related or otherwise. Respondent orally verified these answers during a pre-employment interview. On February 9, 1977 respondent was given a standard pre-employment physical examination. During the examination respondent again represented, orally and in writing, that he had never had a back or hand injury, had not been treated by a doctor in the preceding five years, had never received benefits or compensation related to an injury, illness or disability, and had previously undergone only one x-ray and an EKG. In fact, it was later determined that in two separate incidents in 1971, while he was employed by the City of Newport News, respondent Hall had injured his right hand and his back. Respondent was treated at a local hospital and had received workers' compensation benefits after both of these incidents. A myelogram was performed after the back injury. In addition, at an unspecified date in 1972 or 1973, respondent sustained a head injury requiring out-patient treatment at a hospital, and in May of 1975 respondent received treatment for degenerative joint disease in his right hand.
 
 
 3
 Respondent was offered employment with petitioner and began work shortly after the examination. On April 29, 1977, respondent injured his right hand while swinging a thirty-pound maul in an attempt to loosen a nut. Compensation was paid for several months until respondent returned to work. On April 17, 1978, respondent slipped and twisted his back while working on a generator casing, resulting in an injury that persists to some degree to the present. Petitioner paid compensation until January 7, 1979, when the prior concealed injuries were discovered and petitioner ceased payment on the ground that respondent had committed fraud on his employment application. At the hearing before the ALJ, the parties stipulated that the Act applied, that respondent Hall and the petitioner were in an employee-employer relationship at the time of the injuries, and that the injuries arose out of and in the course of employment. Therefore, in the absence of a misrepresentation defense, respondent Hall is concededly entitled to some compensation benefits.
 
 
 4
 The administrative law judge found that respondent had knowingly and willfully made false representations as to his physical condition; that the petitioner relied on the misrepresentations and that this reliance was a substantial factor in its decision to hire respondent; and that respondent would not have injured his back had the misrepresentations not been made (in other words, that the injuries were causally related to the misrepresentations). Although respondents contend these findings are contrary to the evidence developed at the hearing, we will assume for the purposes of argument that they are true. Despite these findings, both the ALJ and the Benefits Review Board held, although with some reluctance, that the Act makes no provision for denial of benefits under these circumstances. Petitioner was therefore ordered to restore compensation payments based on temporary total disability.
 
 II. Discussion
 
 5
 The Longshoremen's and Harbor Workers' Compensation Act, like most workers' compensation legislation, represents a compromise between employer and employee: for example, employers relinquish common law defenses such as the fellow servant rule and assumption of risk and in turn are assured that the exclusive remedy for employees will be the limited workers' compensation benefits; employees, correspondingly, relinquish their right to sue the employer under the Jones Act or other causes of action in return for the certainty of strict liability compensation for employment related injuries. Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, 449 U.S. 268, 282, 282 n.24, 101 S.Ct. 509, 516, 516 n.24, 66 L.Ed.2d 446 (1980). The only exceptions to an employer's liability in this "carefully tailored ... statutory scheme," Gardner v. Director, OWCP, 640 F.2d 1385, 1389 (1st Cir. 1981), are contained in Section 3(b) of the Act:
 
 
 6
 No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another.
 
 
 7
 33 U.S.C. § 903(b) (1976). Section 31 further provides:
 
 
 8
 Any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this chapter shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not to exceed $1,000 or by imprisonment of not to exceed one year, or by both such fine and imprisonment.
 
 
 9
 33 U.S.C. § 931 (1976).
 
 
 10
 The misrepresentation exception urged upon us by petitioner is referred to as the Larsen test, inasmuch as Professor Larsen in his treatise on workers' compensation describes the "emerging trend" in state workers' compensation cases towards such a doctrine. IC A. Larsen, The Law of Workmen's Compensation § 47.53 (1980). Professor Larsen describes the test as a "melange of contract, causation and estoppel elements." Under the test, compensation benefits are barred where the three conditions found here by the ALJ are present: that is, misrepresentation, reliance and causation.
 
 
 11
 The Act plainly does not encompass such an exception by its express terms. Petitioner nevertheless makes a three-pronged argument for its adoption: first, the Larsen test has been accepted by several states despite the absence of explicit statutory provisions in the state compensation acts; second, that admiralty cases involving the doctrine of maintenance and cure have held that misrepresentation of medical history does bar maintenance and cure benefits; and third, that Section 3(b) should not be regarded as the exclusive exception to liability for compensation, but rather, together with Section 31, considered evidence of a general congressional intent to condemn fraud.[1]
 
 
 12
 The short answer to petitioner's arguments is that to engraft such an exception into the LHWCA would be to "amend a statute under the guise of 'statutory interpretation,' " a task we are not at liberty to perform. Fedorenko v. United States, 449 U.S. 490, 513, 514 n.35, 101 S.Ct. 737, 750, 751 n.35, 66 L.Ed.2d 686 (1981). Courts have firmly resisted attempts to expand the existing exceptions in Section 3(b), see Gardner v. Director, OWCP, 640 F.2d 1385, 1389 (1st Cir. 1981); Hartford Accident and Indemnity Co. v. Cardillo, 112 F.2d 11, 17 (D.C.Cir.), cert. denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940). Given Congress' enunciation of specific limited exceptions to the general rule of compensation without regard to fault, it is well understood that we cannot supply additional exceptions. See Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 109, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); Andrus v. Glover Construction Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910-11, 64 L.Ed.2d 548 (1980). Although this is the principal ground of our affirmance, we will nevertheless briefly review petitioner's arguments.
 
 
 13
 Petitioner identifies nine states that have apparently adopted the Larsen misrepresentation defense.[2] We note, however, that at least three other states have rejected such a defense,[3] and evidently most jurisdictions have not yet addressed this issue. Of the nine states that petitioner identifies, the courts in four have explicitly relied on occupational disease statutes in those jurisdictions that barred compensation where employees misrepresented their medical history, citing those statutes as evidence of legislative intent in a directly analogous setting.[4] We have no such provision available in this case. Two of the leading cases,[5] cited within and outside their respective jurisdictions, relied significantly on Minneapolis, St. Paul & Sault-Ste. Marie Ry. Co. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929), which was, however, drastically curtailed by the subsequent decision in Still v. Norfolk & Western Ry. Co., 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961) (limiting Rock to its facts). In short, while the petitioner attempts to characterize the Larsen test as "uniformly recognized," the picture is not so clear. We would be hesitant to adopt the test as appropriate for federal purposes, even if we were inclined to "remedy" the congressional silence in this area, at the present stage of the doctrine's development. Potomac Electric Power Co., supra, 449 U.S. at 280, 101 S.Ct. at 516 ("Our task is to ascertain the congressional intent underlying the ... provisions enacted in 1927; we are not free to incorporate into those provisions subsequent state-law developments that we may consider sound as a matter of policy.").
 
 
 14
 Respondents contest the applicability of cases recognizing a misrepresentation defense in actions for maintenance and cure, and offer cases under the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq. (1976), as a better analogy. In Still, as noted above, the Supreme Court held such a misrepresentation defense will not normally be available in FELA cases. While it has been observed that maintenance and cure does bear some resemblance to workers' compensation, at least to the extent that both doctrines impose liability on the employer without fault, commentators have also suggested that the analogy might properly end there. G. Gilmore & C. Black, The Law of Admiralty § 6-6 (2d Ed.1975). An employer's potential liability for maintenance and cure is tremendously broad; in particular, liability is not restricted to injuries causally related to employment. The doctrine is "deep-rooted in maritime law" and its scope has traditionally been explored and defined by the courts. Evans v. Blidberg, Rothchild Co., 382 F.2d 637, 639 (4th Cir. 1967). Accordingly, adoption of an exception to liability in that area does not involve the concern of intruding into the legislative domain present in the case before us.
 
 
 15
 Although neither of the analogies provides authoritative guidance, we prefer the analogy to cases construing the FELA and Jones Act. In the face of specific legislative policy favoring compensation of injured employees, those courts have held that such policy overrides the general considerations surrounding an allegedly fraudulent formation of the employment relationship. Still, supra, 368 U.S. at 44-45, 82 S.Ct. at 153-154; Compton v. Luckenbach Overseas Corp., 425 F.2d 1130 (2d Cir.), cert. denied, 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970).
 
 
 16
 Finally, petitioner would have us discern a general anti-fraud legislative intent from the provisions of Sections 3(b) and 31, arguing that Congress could not have intended to allow claimants to benefit from their fraud. As a plain reading of the sections demonstrates, however, the enumerated exceptions do not lend support to a general anti-fraud policy, and Section 31, the only section that expressly speaks to an instance of misrepresentation, applies only misdemeanor sanctions and says nothing regarding cessation or continuation of benefits.
 
 
 17
 Petitioner further argues that the result of affirmance in this case will be to place an intolerable and inequitable burden on employers, who, unable to rely on applicants' representations, will be forced (theoretically) to perform more thorough examinations on all applicants. Although these policy arguments are forcefully and eloquently made, they are drawn neither from the statute nor the legislative history.[6] They require an evaluation of the distribution of risk between employer and employee, and subjective determinations of fairness. These are precisely the types of policy arguments that must be presented to and considered by Congress.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Joe M. Ingraham, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The parties have also proposed several possible relationships between the misrepresentation problem and the second injury fund, 33 U.S.C. § 908(f) (1976). The second injury fund presents entirely separate legal issues and we find it unnecessary and undesirable to suggest an opinion on the interpretation of that section
 
 
 [2]
 Shippers Transport of Georgia v. Stepp, 265 Ark. 365, 578 S.W.2d 232 (1979); Air Mod Corp. v. Newton, 59 Del. 148, 215 A.2d 434 (1965); City of Homestead v. Watkins, 285 So.2d 394 (Fla.1973); Blanton v. Workmen's Compensation Bd., 531 S.W.2d 518 (Ky.1975); Hilt Truck Lines, Inc. v. Jones, 204 Neb. 115, 281 N.W.2d 399 (1979); Martinez v. Driver Mechenbier, Inc., 90 N.M. 282, 562 P.2d 843 (App.1977); Cooper v. McDevitt & Street Co., 260 S.C. 463, 196 S.E.2d 833 (1973); Federal Copper & Aluminum Co. v. Dickey, 493 S.W.2d 463 (Tenn.1973); Volunteers of America of Madison, Inc. v. Industrial Comm'n, 30 Wis.2d 607, 141 N.W.2d 890 (1966)
 
 
 [3]
 General Motors Corp. v. Hargis, 114 Ga.App. 143, 150 S.E.2d 303 (1966); Dressler v. Grand Rapids Die Casting Corp., 402 Mich. 243, 262 N.W.2d 629 (1978); H. J. Jeffries Truck Lines v. Grisham, 397 P.2d 637 (Okl.1964)
 
 
 [4]
 Shippers Transport of Georgia v. Stepp, 265 Ark. 365, 578 S.W.2d 232 (1979); Martin Co. v. Carpenter, 132 So.2d 400 (Fla.1961); Blanton v. Workmen's Compensation Bd., 531 S.W.2d 518 (Ky.1975); Federal Copper & Aluminum Co. v. Dickey, 493 S.W.2d 463 (Tenn.1973)
 
 
 [5]
 Air Mod Corp. v. Newton, 59 Del. 148, 215 A.2d 434 (1965); Martin Co. v. Carpenter, 132 So.2d 400 (Fla.1961)
 
 
 [6]
 The parties have not recited any legislative history from the 1927 consideration or passage of the Act, and we have found none. In the course of his opinion below, the administrative law judge commented that he was unaware of any language in the legislative history that would indicate a misrepresentation exception was contemplated or intended. The only suggestion in the legislative history, however, weighs against adoption of the misrepresentation exception. Contemporaneous construction of the 1922 New York Workmen's Compensation Law, the model from which the LHWCA is adopted, is considered to be persuasive in resolving questions under the federal Act. Potomac Electric Power Co., supra, 449 U.S. at 275-76, 101 S.Ct. at 513-14. Respondent points out that Kenny v. Union Ry. Co. of New York City, 166 A.D. 497, 152 N.Y.S. 117 (1915), held that false statements as to marital status and prior employment experience made on an employment application did not bar an award of workers' compensation benefits. Although the Kenny court also observed that the false statements were not causally related to the subsequent accident, the case lends support to our conclusion that the overall policy of compensation for accidental employment related injuries is to be given effect unless one of the specific statutory exceptions applies