WILLIAM GOLDSTINE, Appellant, *v.*
JENSEN PRE-CAST, Respondent.

No. 16870

December 23, 1986                    729 P.2d 1355

*Robert Owens,* Las Vegas, and *Barbara Gruenewald,* Carson City, for Appellant.

*John J. McCune, Michael B. Springer* and *Timothy E. Rowe,* Reno, for Respondent.

*Badger and Baker,* Carson City, for Amicus Curiae, Nevada Trial Lawyers Association.

## OPINION

By the Court, Young, J.:

The issue raised by this appeal is whether an employee who willfully makes false representations concerning his medical history on an employment application may be denied SIIS benefits when an industrial injury exacerbates the concealed, preexisting condition. While we wholly condemn such conduct on the part of the employee, we are unable to adopt, in the absence of legislative guidance, the rule of exemption proposed by the respondent.

The facts of the case are as follows: On August 5, 1983, the appellant, William Goldstine, applied for employment with

respondent, Jensen Pre-Cast. A form required for the preemployment physical asked: "Have you ever had . . . back injury, back pain, backache or back brace?" Goldstine indicated that he had not. This representation was false. Goldstine had been in an automobile accident the previous year in which he had sustained a back injury. The employer would not have hired Goldstine if this fact had been known. Goldstine was hired, and two months later sustained an industrial injury to his back. The district court ruled that Goldstine was not entitled to SIIS benefits, due to his deliberate and willful misrepresentation.

The court below applied a test proposed by Professor Larson:

> The following factors must be present before a false statement in an employment application will bar benefits: (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

1C Larson, *Workmen's Compensation Law,* § 47.53.

It is true that such a rule would serve the useful purpose of discouraging employee fraud, and allowing the employer to rely on the integrity of the applicant in making its hiring decision. Respondent also argues that such a rule would ultimately reduce industrial injuries to employees, since a person physically unsuited to certain employment due to preexisting disabilities would not be placed in such employment, reducing the risk of re-injury. This may well be. However, we are persuaded that such a policy decision is properly considered by the legislature, rather than by this court. *See* SIIS v. Conner, 102 Nev. 335, 721 P.2d 384 (1986). The workmen's compensation scheme fashioned by the Nevada legislature alters the common-law rights of the employer and the employee. The employee forfeits his common-law right to sue his employer for negligence, while the employer gives up most common-law defenses. *See* NRS 616.370. The purpose of the system is to provide compensation for industrial injuries. *E.g.,* Breen v. Caesars Palace, 102 Nev. 79, 715 P.2d 1070 (1986). The removal of many employer defenses is designed to simplify and speed the administrative process. We view this scheme as a delicate balance between the interests of the parties, a balance which we, as a judicial body, are hesitant to disturb.

Further, an examination of the legislative scheme as a whole convinces us that, where a policy consideration advocates exclusion of coverage, the legislature is perfectly capable of implementing such policy. In fact, the legislature has already determined that no compensation shall be payable for industrial

disease where the employee willfully and falsely represents that he has not previously suffered from such disease. NRS 617.400(1). The legislature has provided that, where an employee's permanent disability is the result of a failure to report a preexisting injury, the employer may seek contribution from the state subsequent injury fund. NRS 616.427. The legislature has determined that compensation may be denied where the employee makes a misrepresentation in order to obtain industrial insurance compensation. NRS 616.675. Finally, the legislature has indicated that the terms of the statutes themselves must control the award or denial of benefits. NRS 616.370(2) states: "The terms, conditions and provisions of this chapter for the payment of compensation and the amount thereof for injuries sustained or death resulting from such injuries shall be conclusive, compulsory and obligatory upon both employers and employees coming within the provisions of this chapter."

Thus, although we are aware that several jurisdictions have adopted the rule proposed by the respondent,[1] we join those courts which have held that such a rule is not properly adopted by the courts.[2]

For the reasons stated above, the judgment of the district court is reversed.

MOWBRAY, C. J., and SPRINGER and GUNDERSON, JJ., concur.

STEFFEN, J., dissenting:

I respectfully dissent.

My brethren on the majority "wholly condemn" the appellant's behavior in willfully falsifying his employment application and then, *sub silentio,* ascribe to the legislature an intention to reward such conduct by failing to cover it specifically within the terms of the Nevada Industrial Insurance Act, NRS Chapter 616.

---

[1]Shippers Transport of Georgia v. Stepp, 578 S.W.2d 232 (Ark. 1979); Air Mod Corporation v. Newton, 215 A.2d 434 (Del. 1965); Martin Company v. Carpenter, 132 So.2d 400 (Fla. 1961); Hilt Truck Lines, Inc. v. Jones, 281 N.W.2d 399 (Neb. 1979); Martinez v. Driver Mechanbier, Inc., 562 P.2d 843 (N.M.App. 1980); Cooper v. McDevitt & Street Company, 196 S.E.2d 833 (S.C. 1973); Federal Copper and Aluminum Company v. Dickey, 493 S.W.2d 463 (Tenn. 1973).

[2]*See* Still v. Norfolk & Western Ry. Co., 368 U.S. 35 (1961); Newport News Shipbuilding & Dry Dock Co. v. Hall, 674 F.2d 248 (4th Cir. 1982); Marriott Corp. v. Indus. Comm'n of Arizona, 708 P.2d 1307 (Ariz. 1985); Kraus v. Artcraft Sign Co., 710 P.2d 480 (Colo. 1985) (reversing Artcraft Sign Company v. McGrath, 679 P.2d 1103 (Colo.App. 1983), cited by respondent as adopting the rule); General Motors Corporation v. Hargis, 150 S.E.2d 303 (Ga.App. 1966); Teixeira v. Kauikeolani Children's Hospital, 652 P.2d 635 (Hawaii App. 1982); Fontenot v. Cagle Chevrolet, Inc., 417 So.2d 1338 (La.App. 1982); Dressler v. Grand Rapids Die Casting Corp., 262 N.W.2d 629 (Mich. 1978); H. J. Jefferies Truck Line v. Grisham, 397 P.2d 637 (Okl. 1964).

Courts have seldom been timid in addressing matters of fraudulent misrepresentation and have, I believe, rather steadfastly refused to grant relief to those who seek advantage from their own wrongdoing. In 1894, this court announced the principle of law "that he who, by his language or conduct, leads another to do what he otherwise would not have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acts. This rule has its justification in the justness of preventing the accomplishment of fraud." Gardner v. Pierce, 22 Nev. 146, 153-54, 36 P. 782 (1894). Also, in McCausland v. Ralston, 12 Nev. 195, 207-08 (1877), our court approvingly cited from Lord Mansfield in Holman v. Johnson (1 Cowp. 341) wherein he said: "The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." Courts over the centuries have advanced and refined common-law principles governing fraud, and have been vigilant in withholding relief from parties who seek to profit from their own misdeeds. I do not view a statutory alteration of the common-law rights of employers and employees under workmen's compensation laws as cause to either positively or passively reward fraud in the courts. The policy considerations underlying a scheme of workmen's compensation do not include awarding compensation attributable to fraud.

In the recent case of Hansen v. Harrah's, 100 Nev. 60, 675 P.2d 395 (1984), this court rejected the argument it embraces in the instant case. There, we were challenged to await a legislative remedy for retaliatory discharge since the legislature had provided no basis for relief under the Nevada Industrial Insurance Act for discharging an employee in retaliation for filing a workmen's compensation claim. In judicially recognizing the tort of retaliatory discharge in *Hansen,* we deferred to a strong public policy in the tradition of the common law. We should be equally motivated in the instant case, for it is consistent with firmly established public policy and legal principle that wrongdoers will not receive state-sponsored aid in seeking advantage from their misbehavior. It is the time-tested strength of the latter maxim that leads me to conclude that the legislative omission on the subject of the type of misrepresentation here present was inadvertent or, in any event, unintended. Since I cannot envision a legislative intent to reward wrongdoing any more than I could conceive legislative condonation of retaliatory discharge, I must respectfully dissent from the position of my brethren.