**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROLINA STEVEDORING COMPANY;
HOMEPORT INSURANCE COMPANY,
Petitioners,

v.

ELLENOR DAVIS; BRENDA SHAW

MCNEIL; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

No. 99-1283

On Petition for Review of an Order of the
Benefits Review Board.
(98-860, 98-861, 98-862)

Submitted: July 27, 1999

Decided: September 14, 1999

Before ERVIN, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard P. Salloum, FRANKE, RAINEY & SALLOUM, P.L.L.C.,
Gulfport, Mississippi, for Petitioners. E. Paul Gibson, RIESEN LAW
FIRM, L.L.P., North Charleston, South Carolina, for Respondents

Davis and McNeil. Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Samuel J. Oshinsky, Counsel for Longshore, Andrew D. Auerbach, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carolina Stevedoring Company ("Carolina Stevedoring") and Homeport Insurance Company petition for review of the decision and order of the Department of Labor's Benefits Review Board ("Board") affirming the Administrative Law Judge's ("ALJ") decision and order awarding death benefits to Gerald Warren's two minor children under the Longshore and Harbor Workers' Compensation Act, U.S.C.A. §§ 901-950 (West 1986 & Supp. 1999) ("LHWCA"). Warren, an employee of Carolina Stevedoring, was fatally injured at work on January 20, 1996. Carolina Stevedoring contends that despite the fact that Warren was killed during a job-related incident, Warren's own misconduct, specifically concealing from Carolina Stevedoring a history of grand mal seizures, precludes an award of benefits. Carolina Stevedoring also contends that Warren did not have the wage earning capacity of a longshoreman at the time of the fatal accident. Finding no reversible error, we affirm.

Warren, a longshoreman, was killed after being run over by a tractor trailer truck as he was standing on the docks talking with a coworker. (Joint Appendix ("J.A.") at 179-82, 280). Warren died at the scene as a result of multiple traumatic crushing injuries of the thorax, upper abdomen, and left upper extremity. (J.A. at 134-36).

Warren had a history of grand mal seizures. His first known seizure was in July 1993. (J.A. at 73). Warren had another seizure in Novem-

2

ber 1993. (J.A. at 74-79). Dr. John Plyler, a neurologist, prescribed Dilantin and prohibited Warren from driving until he experienced no seizures for six months. He further advised Warren to take "precautions" when working around hazardous machinery. (J.A. at 69-70). Warren had seizures again in December 1993 and January 1994. (J.A. at 146).

In February 1994, Warren visited Dr. Plyler and reported the January seizure. Plyler kept Warren on Dilantin and maintained the driving and work restrictions. (J.A. at 64). Despite having a seizure in August 1994, Warren told Plyler in December 1994 that he had not had any seizures within the past six months. Based on this representation, Plyler permitted Warren to resume full work responsibilities. (J.A. at 66, 85). Warren, however, suffered additional seizures in April 1995 and January 1996. Emergency room records note that Warren had not been taking Dilantin as prescribed. (J.A. at 92, 99, 104). Warren died at work nineteen days after his last seizure.

Carolina Stevedoring contends that it was not notified of Warren's entire history of seizures, particularly the seizure that occurred on January 1, 1996. Carolina Stevedoring further contends that if it had known that Warren had an unstable seizure condition, he would not have been employed as a longshoreman and, consequently, would not have been on the docks the day of the accident. (J.A. at 214-18).

At the hearing before the ALJ, a rehabilitative counselor testified that given Warren's medical history, he should not have been employed as a longshoreman. (J.A. at 344-47). The counselor further testified that in light of his medical condition, Warren had an earning capacity of $4.75 to $6.00 per hour. Warren earned $18 to $20 an hour as a longshoreman. (J.A. at 353).

The ALJ found that neither Warren's failure to take his medication nor his failure to inform his physician that he had suffered seizures, constituted an intervening cause of the accident that took his life, although these factors would have made him ineligible for employment. The sole cause of Warren's death, the ALJ found, was the injuries suffered as a result of the accident. The ALJ also calculated Warren's death benefits based upon his average weekly wage of $854.35. The parties stipulated to this amount at the hearing. (J.A. at

3

5-6). The Board affirmed the ALJ's order in all respects. (J.A. at 10-16).

Under 33 U.S.C. § 903(a), workers' compensation shall be payable if an employee dies from an injury occurring upon a navigable waters' adjoining dock. Except for injuries caused solely by the decedent's intoxication or "willful intention . . . to injure or kill himself or another," 33 U.S.C. § 903(c), compensation is payable irrespective of fault as a cause of the injury. See 33 U.S.C. § 904(b); Newport News Shipbuilding & Dry Dock Co. v. Hall, 674 F.2d 248, 250 (4th Cir. 1982) (exceptions under § 903(c) are the only exceptions to an employer's liability). Our review of the Board's decisions under the LHWCA is limited to a search for errors of law and deviations from the statutory conclusiveness afforded to those factual findings by the ALJ that are supported by substantial evidence. See 33 U.S.C. § 921(b)(3); Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988).

There is no evidence that Warren was intoxicated or that he had the willful intent to injure or kill himself or another at the time of the fatal accident. Warren may have disregarded his own safety by working and not taking his medication, but this falls short of a willful intent to injure or kill. See, e.g., Hall, 674 F.2d at 250 (employee's fraudulent misrepresentations regarding his medical condition provided no exception to employer's liability); Glens Falls Indem. Co. v. Henderson, 212 F.2d 617, 618 (5th Cir. 1954) (worker who died during strenuous labor did not intend to injure or kill himself despite a physician's warning that such labor could be fatal). Nor, as the ALJ noted, is there any evidence that Warren was having a seizure at the time of the accident.

Carolina Stevedoring argues that it is not liable for benefits because Warren's conduct was an intervening cause of his death. Specifically, it is asserted that Warren's failure to inform his employer of his medical condition and his failure to take his medications caused his fatal injury. Normally, an employer is liable for all injuries that naturally flow from a work related accident, even if such injuries occur at a later point in time. Where, however, injuries occurring subsequent to the work accident are the direct result of the employee's own unexcused conduct, such conduct may be considered to be an intervening

4

cause of the employee's injuries and absolve an employer from liability. See Bludworth Shipyard, Inc. v. Lira, 700 F.2d 1046, 1051 (5th Cir. 1983).

In Lira, the employee sought compensation for his addiction to narcotic pain killers that he took as a result of a work-related back injury. The employee, however, intentionally did not inform his treating physician of a pre-accident addiction to narcotics. Such conduct, the court found, was the cause of the addiction. Thus, the addiction was not compensable because the addiction was not merely a consequence of the back injury. In the instant case, there was no subsequent injury related to the original fatal accident. Nor did Warren's conduct worsen the result of the accident. Thus, the intervening cause doctrine is inapplicable to this case.

Carolina Stevedoring also contends that benefits should not be based upon Warren's average weekly wage at the time of the accident because Warren was not eligible to be a longshoreman at the time of the accident due to his unstable seizure history. Rather, it is argued that compensation should be based upon Warren's wage earning capacity as an individual with unstable seizures. An injured employee's average weekly wage at the time of the accident is typically the basis upon which compensation is determined. See 33 U.S.C. § 910. During the hearing before the ALJ, the parties stipulated that Warren had an average weekly wage of $854.35. (J.A. at 332-33). Absent exceptional circumstances, the parties and this court are bound by stipulations or concessions of fact made below. See Richardson v. Director, Office of Workers' Compensation Programs , 94 F.3d 164, 167 (4th Cir. 1996). Given that the ALJ relied on the parties' stipulation and the formula typically used in longshore cases for determining wage earning capacity, we find that substantial evidence supports her findings with regard to Warren's average weekly wage and the amount of compensation awarded to the survivors.

Accordingly, we affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

5