VICKI ARNESANO, Individually, and as Administratrix for the ESTATE OF SALVATORE ARNESANO, Deceased; and as Natural Parent for DANIELE and LUCA ARNESANO, Minors, Appellants/Cross-Respondents, *v.* THE STATE OF NEVADA, on Relation of Its DEPARTMENT OF TRANSPORTATION, Respondent/Cross-Appellant.

No. 27924

July 15, 1997                                     942 P.2d 139

*Gordon and Silver* and *Joseph S. Kistler,* Las Vegas, for Appellants/Cross-Respondents.

*Frankie Sue Del Papa,* Attorney General, and *Roger D. Comstock,* Deputy Attorney General, Carson City, for Respondent/ Cross-Appellant.

## OPINION

*Per Curiam:*

On the morning of May 21, 1991, Salvatore Arnesano ("Arnesano") was driving on I-95, travelling southbound in the Flamingo Road exit lane. A pickup truck travelling southbound in the right travel lane struck the rear of Arnesano's Ford. The initial impact was minor, but caused the Ford to spin out of control. The Ford slid across the southbound travel lanes into the center median of I-95 until the driver's side crashed into a concrete post three feet in diameter, and located sixteen feet off the paved portion of the freeway. Arnesano sustained severe head trauma and was pronounced dead at the scene.

Arnesano had crashed into the northernmost post in a row of posts that supported a freeway overpass. The overpass, built in 1966, was replaced by a more complex interchange in 1985.

When the new interchange was built, the older overpass was allowed to remain standing so that the University of Nevada could conduct seismic testing on it.

The original plans for the old overpass did not require barriers between the travel lanes and the support posts. In 1977, the American Association of State Highway Engineers published a "Guide for Selective Location, Designing of Traffic Barriers" (the "AASHTO Guide"). According to this guide, solid, non-moveable objects within thirty feet of the traveled roadway should be protected by a barrier such as a guardrail, concrete "Jersey" barrier, or crash cushions.

In 1992, appellants filed a complaint for damages alleging that the State had negligently failed to protect the public from the support posts. Before trial, pursuant to NRCP 68 and NRS 17.115, Arnesano's wife, Vicki Arnesano, and Arnesano's children, Daniele Arnesano and Luca Arnesano, made offers of judgment to the State in the amount of $50,000 each, exclusive of interest, costs, and attorney fees. The Estate of Salvatore Arnesano (the "Estate") made an offer of judgment in the amount of $9,316.62, exclusive of interest, costs, and attorney fees. The State rejected these offers.

In January 1995, a jury trial was held. The jury found the State liable for Arnesano's death and awarded appellants the following amounts: Vicki Arnesano—$625,000; Daniele Arnesano—$200,000; Luca Arnesano—$225,000; and the Estate—$25,000.

After trial, appellants filed a motion for entry of final judgment and award of attorney fees, costs, and prejudgment interest, pursuant to NRCP 68 and NRS 17.115, NRS 18.010, and NRS 18.020. The district court ruled that Vicki Arnesano, Daniele Arnesano, and Luca Arnesano could not recover attorney fees, costs, or prejudgment interest "because this would cause a judgment to be entered against the governmental defendant for more than $50,000 each exclusive of interest from the date of entry of judgment." The district court then entered a judgment based upon the statutory limitations set forth in NRS 41.035(1)[1] and awarded $50,000 to Vicki Arnesano, $50,000 to Daniele Arnesano, and $50,000 to Luca Arnesano. It also entered a

---

[1]NRS 41.035 reads in part:

**Limitation on award for damages in tort actions.**

1. An award for damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the state or any political subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

damage award in favor of the estate in the amount of $9,316.62,[2] along with the pro rata share of attorney fees and costs per NRS 18.010, and prejudgment interest under NRS 17.130(2). The State appeals the judgment reflecting these awards. Appellants cross-appeal.

NRS 41.035(1) provides that an award for damages in a tort action against the state cannot exceed $50,000, exclusive of interest computed from the date of judgment, per claimant. Appellants contend that NRS 41.035(1) violates their rights under the Nevada Constitution to equal protection and due process of law. Appellants argue that the statute effectively retracts the State's waiver of sovereign immunity for the seriously injured, who cannot be adequately compensated. Appellants further contend the limit on damages is arbitrary because the Nevada treasury is solvent.

We have previously held that NRS 41.035(1) does not violate the equal protection clause. State v. Silva, 86 Nev. 911, 478 P.2d 591 (1970).

In Nevada, there is no constitutional or common law right to recover from the State for negligent operation of its roads. Hardgrave v. State ex rel. Hwy. Dep't, 80 Nev. 74, 77-78, 389 P.2d 249, 250-51 (1964). Accordingly, NRS 41.035 has not abrogated a fundamental right, and we decline to apply heightened scrutiny to the statute. See McCorvey v. Utah State Dept. of Transp., 868 P.2d 41, 47 (Utah 1993) (declining to apply heightened scrutiny to statutory cap where there was no common law right to recover for injury resulting from negligent road maintenance).

"Substantive due process guarantees that no person shall be deprived of life, liberty or property for arbitrary reasons." Allen v. State, Pub. Emp. Ret. Bd., 100 Nev. 130, 134, 676 P.2d 792, 794 (1984) (citation omitted). Large jury awards could present a threat to the state treasury. A statutory cap on the damages the state must pay for its tortious conduct furthers a legitimate interest in protecting the state treasury. See Packard v. Joint School Dist. No. 171, 661 P.2d 770, 775 (Idaho Ct. App. 1983) (a statutory cap on governmental liability relates to effective risk management by public entities and their insurers, and protects the public coffers). We conclude that NRS 41.035(1) does not violate appellants' due process rights. We further conclude that denying

---

[2]The Estate was limited by statute to recovery of the decedent's actual funeral expenses. See NRS 41.085(5)(b).

appellants the full jury award does not constitute a taking without due process of law and without just compensation.

Appellants further argue that the statutory cap violates their rights to a jury trial. While it is the jury's role as factfinder to determine the extent of a plaintiff's injuries, "it is not the role of the jury to determine the legal consequences of its factual findings. . . . That is a matter for the legislature." Boyd v. Bulala, 877 F.2d 1191, 1196 (4th Cir. 1989) (upholding a statutory cap on medical malpractice liability). Hence, the statutory cap does not violate appellants' rights to a jury trial.

Appellants argue that the plain language of the statute, which states that an "award for damages in an action sounding in tort" may not exceed $50,000, exclusive of post-judgment interest, does not preclude an additional award of attorney fees, costs, and prejudgment interest.

The State argues that the legislature did not intend for any additional payment for costs, prejudgment interest, or attorney fees above the $50,000 limit on damages. The State contends that the legislative history of NRS 41.035(1) shows that only post-judgment interest should be paid, not prejudgment interest. The State further argues that limiting liability to a definite amount protects its interest in fiscal certainty.

In construing a statute, this court must give effect to the literal meaning of its words. State v. Webster, 88 Nev. 690, 696, 504 P.2d 1316, 1320 (1982).

In Griffin v. Tri-Met, 870 P.2d 808, 812 (Or. 1994), the Oregon Supreme Court reviewed a state statute that imposed a $100,000 limit on a public body's "liability." The plaintiff argued that the $100,000 limit was meant to apply only to awards of tort damages, not to awards of attorney fees and costs. The Supreme Court of Oregon disagreed, stating:

> The statute, however, contains no such qualification. . . . The statute does not refer to "damages" at all. Had the legislature intended the limit on 'liability' to apply only to liability for tort *damages,* it could have said so.

*Id.* (emphasis added).

Similarly, in DeCordova v. State, 878 P.2d 73 (Colo. Ct. App. 1994), a plaintiff's judgment against a Colorado hospital was limited by a statute that stated:

> (1) The maximum amount that may be recovered under this article in any single occurrence, whether from one or more public entities and public employees, shall be:

(a) For any injury to one person in any single occurrence, the sum of one hundred and fifty thousand dollars.

*Id.* at 75. The plaintiff contended that the statutory limit did not apply to costs. *Id.* at 74. However, because the statute placed a limit on total "recovery," the court of appeals concluded that the plaintiff could recover actual costs only to the extent that total "recovery" did not exceed the limitation. *Id.* at 75-76.

The State of Nevada waived sovereign immunity in NRS 41.031.[3] NRS 41.035(1) limits this waiver, stating:

1. An award for *damages* in an action sounding in tort . . . may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

(Emphasis added.)

Unlike *Griffin,* where "liability" was limited, or the statute in *DeCordova* that limited "recovery," the Nevada statute limits "damages" to $50,000 exclusive of interest computed from the date of judgment. "Damages" has been defined as:

A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another. Restatement, Second, Torts, § 12A. Money compensation sought or awarded as a remedy for a breach of contract or for tortious acts.

*Black's Law Dictionary* 466 (6th ed. 1990). This definition does not encompass attorney fees and costs.

Attorney fees and costs are not "damages" in this context. Thus, giving effect to the literal meaning of the words of the statute, we conclude that NRS 41.035(1) does not limit the State's liability for attorney fees and costs. We now hold that the statute does not preclude attorney fees and costs that exceed the $50,000 cap on damages.

---

[3]NRS 41.031 provides, in pertinent part:

1. The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations, except as otherwise provided in NRS 41.032 . . . .

Unlike attorney fees and costs, prejudgment interest is derived from damages. The legislature addressed interest on damages in NRS 41.035(1), which specifies that an award for damages "may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment."[4] The legislature clearly intended to preclude prejudgment interest on damages from exceeding the statutory cap, but to allow post-judgment interest to exceed the statutory cap. Further, the legislature has repeatedly failed to include prejudgment interest in the category of recoverable interest in excess of the statutory cap under NRS 41.035(1) since the enactment in 1979 of NRS 17.130(2), the Nevada prejudgment interest statute. Accordingly, the heirs of Salvatore Arnesano have no right to prejudgment interest on their wrongful death claims. Such claims for prejudgment interest are only valid when the interest award does not cause the total individual award, exclusive of post-judgment interest, attorney fees and costs, to exceed $50,000. Accordingly, the Estate's award of prejudgment interest is valid.

On cross-appeal, the State argues that the district court erred in denying its motion to dismiss because there was no evidence to show that it caused the fatal accident to Arnesano. The State argues that no feature of the freeway caused the accident and that striking the support post was not legally foreseeable. The State contends that the proximate cause of the accident was the impact of the pickup truck.

"One whose tortious conduct is otherwise one of the legal causes of an injurious result is not relieved from liability for the entire harm by the fact that the tortious act of another responsible person contributes to the result." Restatement (Second) of Torts § 879 cmt. a (1965). Accordingly, we conclude that the State is not relieved from liability by the fact that the accident was initially triggered by the impact of the pickup.

"The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about

---

[4]In 1973, the statute was amended as follows:

No award for damages in an action sounding in tort brought under NRS 41.031 may exceed the sum of $25,000, *exclusive of interest computed from the date of judgment,* to or for the benefit of any claimant. No such award may include any amount as exemplary or punitive damages. [or as interest prior to judgment.] (Amendment deletes prejudgment interest language.)

1973 Nev. Stat., ch. 744, § 1 at 1532.

the harm." Restatement (Second) of Torts § 431. Trial testimony indicates that safety barriers would have reduced or prevented the impact of the Ford against the support post. We conclude that striking the support post was legally foreseeable, and that substantial evidence supports the jury's finding that the State's failure to install such barriers was a legal cause of Arnesano's death.

The State argues that the trial court gave incorrect jury instructions on proximate cause because the only Nevada case discussing the "substantial factor" test is one in which the court applied California law. We conclude that the substantial factor test is a correct statement of legal cause, and the jury instructions were proper. *See* Restatement (Second) of Torts § 431.

The State argues that its failure to adequately protect the concrete post falls within the ambit of NRS 41.032(2), the discretionary act exception to the state's waiver of sovereign immunity. The State points out that the old overpass met all standards for reasonable safety when it was constructed in 1966, and that until 1991 there had never been an accident where anyone was injured from colliding with the posts. The State argues that any decision to upgrade to current standards of safety by installing guardrails was a discretionary act and could not be the basis for a negligence cause of action.

Discretionary immunity is limited to conduct involving policy decisions. Harrigan v. City of Reno, 86 Nev. 678, 681, 475 P.2d 94, 95 (1970); Restatement (Second) of Torts § 895B cmt. d. Accordingly, discretionary immunity applies to the planning level of government, but not to the actual construction and operation of a project. *Harrigan,* 86 Nev. at 681, 475 P.2d at 95.

In *Webster,* a driver suffered a fatal collision with a horse that had wandered onto a freeway. 88 Nev. at 690-91, 504 P.2d at 1318. This court upheld an award of damages against the State for its negligence in failing to install a cattleguard at the freeway entrance. *Id.* at 694, 504 P.2d at 1318. This court explained,

> Whether or not, for the convenience of the traveling public, the State would construct a controlled-access freeway between the two cities or construct a portion of the route was an exercise of discretion based upon policy. Its decision to do so was a discretionary act. Once the decision was made to construct a controlled-access freeway in the area where this accident happened, the State was obligated to use due care to make certain that the freeway met the standard of reasonable

safety for the traveling public. This is the type of operational function of government not exempt from liability if due care has not been exercised and an injury results.

*Id.* at 694-95, 504 P.2d at 1319 (citations omitted).

Following *Webster,* once the government chose to build the overpass, it became obligated to ensure that all aspects of the overpass met the standard of reasonable safety. *Id.* at 694-95, 504 P.2d at 1319. In the years after the overpass was built, changes in conditions may have mandated new safety precautions. We conclude that the state's decision not to install barrier protection was an operational matter and therefore the State was not immune from liability under NRS 41.032(2).

We conclude that the district court erred in ruling that Vicki Arnesano, Daniele Arnesano, and Luca Arnesano could not recover attorney fees and costs. We therefore remand this case to the district court to enter judgment in accordance with a determination of the respective parties' pro rata share of attorney fees and costs. We affirm the decision of the district court in all other respects.[5]

---

[5]The Honorable Miriam Shearing, Chief Justice, did not participate in the decision of this appeal.