COUNTY OF CLARK, ex rel., UNIVERSITY MEDICAL CENTER, Appellant, v. KIMBERLY UPCHURCH, a Minor, by and Through MARTHA IMELDA UPCHURCH and JOHN LOWELL UPCHURCH, the Parents and Natural Guardians of KIMBERLY UPCHURCH; MARTHA IMELDA UPCHURCH and JOHN LOWELL UPCHURCH, Individually, Respondents.

No. 27368

July 27, 1998

961 P.2d 754

*Alverson, Taylor, Mortensen, Nelson & Sanders,* and *Marie Ellerton,* Las Vegas, for Appellant.

*Lyles, Austin & Burnett, Ltd.,* and *John R. Hawley,* Las Vegas, for Respondents.

## OPINION

By the Court, WAGNER, D. J.:

On July 9, 1990, respondent Martha Imelda Upchurch ("Mrs. Upchurch"), age twenty-nine, gave birth to a daughter, respondent Kimberly Upchurch ("Kimberly"), at the hospital of appellant University Medical Center of Southern Nevada ("UMC") in Las Vegas. Kimberly was born with cerebral palsy.

Donald Roberts, M.D., and Edward Spoon, M.D., two obstetric-gynecology residents employed by the State of Nevada and the University of Nevada-Reno ("UNR") School of Medicine, were the attending physicians throughout the labor and delivery. Mrs. Upchurch and her husband, respondent John Lowell Upchurch ("Mr. Upchurch") (collectively "the Upchurches"), filed a complaint with the Nevada Department of Business and Industry, Division of Insurance, Medical-Legal Screening Panel. Kimberly, and Mr. and Mrs. Upchurch were each named claimants on the complaint. The Upchurches alleged that the medical mismanagement of various state actors, including Drs. Roberts and Spoon, the State of Nevada, and the UNR School of Medicine, caused their daughter's condition.

In October 1993, the Upchurches voluntarily settled their

claims with the State of Nevada, the UNR School of Medicine, and Drs. Roberts and Spoon, for an aggregate sum of $150,000— $50,000 for each claimant (*i.e.,* Kimberly, Mr. Upchurch, and Mrs. Upchurch). The Upchurches accepted this sum in conjunction with a release agreement "in full compromise, settlement and satisfaction of and as sole consideration for the final release and discharge of all actions, claims and demands whatsoever that now exist or may hereafter accrue . . . ." The release further stated that the settlement "shall not be deemed or construed as an admission of liability to [the Upchurches] by the persons, parties and entities released herein but, on the contrary, any and all such liability is expressly denied."

Another provision in the parties' settlement agreement specified:

> Said settlement funds represent the statutory "cap" applicable to the State of Nevada pursuant to NRS 41.035, and in no way constitute a release of any actions, claims or rights that the undersigned may have against all other parties, including but not limited to other governmental entities, Dr. Tayengco (the attending physician on the day of delivery), [UMC], the County of Clark as a separate governmental entity, or any of their agents, employees or representatives. The undersigned expressly reserve any rights they may have to claim a separate governmental entity "cap" from the County of Clark or to claim that no "cap" is applicable in this case.

Subsequently, the Upchurches filed an amended complaint with the Nevada Medical-Legal Screening Panel adding UMC and Dr. Tayengco and deleting all parties who signed the settlement agreement.

In December 1993, the Upchurches filed the instant action for declaratory relief against UMC, seeking a judicial determination that there is no applicable statutory "cap" as to UMC because UMC denied that Drs. Roberts and Spoon were employees, or alternatively, that the Upchurches were entitled to two separate sets of damage "caps" of $150,000 because Clark County (which operates and funds UMC) and the State of Nevada are separate and independent governmental entities.

The Upchurches filed a motion for summary judgment claiming that NRS 41.031 and NRS 41.035 provide them with the right to seek "a second set of statutory damage caps." UMC filed its opposition to the Upchurches' motion and a countermotion for summary judgment. UMC realleged its affirmative defenses and alleged that the Upchurches had no right to additional damages after having recouped the statutory damage limit from the state.

The district court directed UMC to rebrief the substantive issues regarding NRS 41.031 and NRS 41.035 in the form of a motion to dismiss. The district court then entered an order, in effect, granting summary judgment for the Upchurches. The written order stated:

> [The Upchurches] are not precluded from recovering a second set of statutory caps from County of Clark, pursuant to NRS 41.031 and NRS 41.035. Therefore, [UMC's] motion to dismiss is denied and, inasmuch as this decision resolves the subject declaratory relief action, this decision shall act as a final judgment on the declaratory relief action in favor of [the Upchurches] and against [UMC]. Therefore, the trial in this matter is moot . . . .

UMC appeals this order, which was, in effect, a summary judgment.

Meanwhile, the Upchurches filed a separate complaint alleging that UMC was institutionally negligent and negligent for the damages arising from and out of Kimberly's birth, as well as vicariously negligent for the malpractice of the doctors and the nurses involved in Kimberly's delivery and care. This negligence claim is pending.

## DISCUSSION

Declaratory relief is available only if: (1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for judicial determination. Knittle v. Progressive Casualty Ins. Co., 112 Nev. 8, 10, 908 P.2d 724, 725 (1996). However, whether a determination in an action for declaratory judgment is proper is a matter for the district court's discretion and will not be disturbed on appeal unless the district court abused that discretion. El Capitan Club v. Fireman's Fund Ins., 89 Nev. 65, 68, 506 P.2d 426, 428 (1973).

UMC argues that the issue of the statutory damage limitation is not ripe for judicial determination because the question of UMC's underlying liability remains unresolved. It is true that UMC's liability has not been determined. However, courts must also consider whether speedy resolution of the issue might promote economy in the litigation process or might lead to meaningful pretrial settlement. Cf. El Capitan Club, 89 Nev. at 70, 506 P.2d at 429. Although there has been no determination regarding UMC's liability, the resolution of the issue will likely end the controversy

between the parties. Thus, immediate judicial review of this issue will promote economy in the litigation process.

Furthermore, the issue of whether the $50,000 statutory damage limitation applies separately to each governmental entity and its actors or whether it applies to all governmental entities in the aggregate is one of first impression and of fundamental public importance. This issue may profoundly affect the state treasury and budgets of other state agencies. In addition, this issue will likely arise again and its resolution might forestall future litigation. While the liability of UMC in this case has not been decided, resolution of the issue may end the controversy between the parties and could save them from undergoing a lengthy and expensive trial.

NRS 30.040 provides in relevant part:

> Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

This provision suggests that immediate review of the rights of the Upchurches and UMC pursuant to NRS 41.031 and 41.035 is appropriate. Thus, we conclude that the district court did not abuse its discretion in granting declaratory relief.

In granting declaratory relief, the district court determined that the Upchurches were entitled to damages from UMC, even though the State of Nevada had already paid each claimant the maximum $50,000 allowed under NRS 41.035. UMC argues that the district court erred in determining that the Upchurches could seek a second set of statutory damage limitations under NRS 41.031 and 41.035. According to UMC, the legislature intended that the damage cap apply on a "per claimant, per wrong basis" rather than a "per claimant, per wrong, per government actor" basis.

---

The construction of a statute is a question of law subject to de novo review. *State, Dep't of Mtr. Vehicles v. Lovett,* 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994). The intent of the legislature is the controlling factor in statutory interpretation. Cleghorn v. Hess, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993). However, "where a statute is susceptible to more than one interpretation it should be construed 'in line with what reason and public policy would indicate the legislature intended.'" *Lovett,* 110 Nev. at 477, 874 P.2d at 1249-50 (quoting State, Dep't Mtr. Vehicles v. Vezeris, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

NRS 41.031 provides, in relevant part:

> 1. The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations, except as otherwise provided in NRS 41.032 to 41.038, inclusive . . . . The State of Nevada further waives the immunity from liability and action of all political subdivisions of the state, and their liability must be determined in the same manner, except as otherwise provided in NRS 41.032 to 41.038, inclusive . . . .
> 2. An action may be brought under this section against the State of Nevada or any political subdivision of the state. In any action against the State of Nevada, the action must be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the state whose actions are the basis for the suit . . . .

NRS 41.035(1) provides:

> An award for damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the state or any political subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

Neither NRS 41.031 nor 41.035 make clear whether a tort plaintiff may recover an award equal to the statutory damage limitation from the state and each political subdivision or whether a tort plaintiff is limited to only one award equal to the statutory damage limitation, regardless of the number of defendant political subdivisions. The statutes are ambiguous as to the proper application of the statutory damage limitation. We must, therefore, first look to the legislative history.

The legislative history of NRS 41.031 and NRS 41.035 from 1965, the year of the original enactment, and 1973, the first year of substantive amendments, reveals that this issue was not discussed. In 1977, the legislature amended NRS 41.035(1) by adding the language: "*or* against a present or former officer or employee of the state *or any* political subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment. . . ." *See* 1977 Nev. Stats., ch. 584, § 5, at 1539 (emphasis added). The

1977 hearings on the amendment reflect that, between 1965 and 1977, there had been some question among civil lawyers and the courts as to whether these statutes protected individual state employees from tort liability arising out of official state activities. *See* Hearings on S.B. 260 before the Assembly Judiciary Comm., 59th Leg. (Nev., April 15, 1977) (statements of Senator Gary Sheerin and Deputy Attorney General Mike Dyer), *reprinted in* Legislative History of S.B. 185 (1965), at 21-22. The amendment to NRS 41.035 was enacted to make it absolutely clear that the statutes insulated individual public employees from personal liability. Thus, contrary to the Upchurches' contention, the language was not added to empower tort plaintiffs to seek multiple statutory damage limitations. *See id.* There is no indication that the legislature intended, by this amendment, to permit multiple damage awards subject to separate limitations. In fact, the only indirect discussion of multiple damage awards indicates that the idea of multiple recoveries up to the statutory limitation from different state actors for a single action was rejected.[1] However, the question was not clearly addressed by the legislature.

Therefore, we must consider NRS 41.031 and 41.035 in relation to the prior decisions interpreting these provisions and the public policy implications. The question in this case is whether each person can recover on each claim from each state actor. As stated in Arnesano v. State, Dep't Transp., 113 Nev. 815, 942 P.2d 139 (1997), protecting the state is a legitimate interest. Judicial determination that the state, through different state actors, is subject to multiple statutory damage limitations for any one action arising out of a single incident may have a massive and deleterious effect upon state and local treasuries. In addition, determining which individuals or entities are state actors raises complex issues with respect to litigation of tort claims.

On the other hand, prohibiting multiple recoveries in this case effectively insulates UMC from liability. UMC will not be held accountable for any misfeasance it may have committed.

It is important that there be some certainty in the law with regard to the application of governmental immunity caps in order

---

[1]During a March 15, 1977 Nevada Senate Judiciary Committee hearing, a witness suggested that the two statutes be amended to provide that, in addition to the $25,000 (now $50,000) limitation of liability as against the state, state employees also be liable up to another $25,000. Senator Bryan questioned this argument, stating that doing so would weaken the argument that $25,000 represented the statutory maximum recovery. Minutes of the Senate Judiciary Comm., 59th Leg. (Nev., March 15, 1977) (statements of Senators Bryan and Sheerin), *reprinted in* Legislative History of S.B. 260 (1965), at 7. Senator Sheerin concurred with Senator Bryan's assessment. *Id.*

that litigants may make proper decisions about settlements as well as preparation for litigation.

Virtually all jurisdictions have abolished or substantially abolished the doctrine of governmental immunity. In balancing the rights of the public to receive recovery from tortious acts of government and government agents with the need to protect taxpayers and public funds from potentially devastating judgments, state governments have used an array of different approaches. All have been concerned with the problem of protecting the public treasury.

> Large jury awards could present a threat to the state treasury. A statutory cap on the damages the state must pay for its tortious conduct furthers a legitimate interest in protecting the state treasury. *See* Packard v. Joint School Dist. No. 171, 661 P.2d 770, 775 (Idaho Ct. App. 1983) (a statutory cap on governmental liability relates to effective risk management by public entities and their insurers, and protects the public coffers).

Arnesano v. State, Dep't Transp., 113 Nev. 815, 819, 942 P.2d 139, 142 (1997).

Most jurisdictions have adopted statutes limiting the damages which are recoverable against government tortfeasors. Courts have uniformly recognized the rights of the legislative branch of the government to set the limits of such recovery, and such limits have been overwhelmingly deemed to be constitutional, particularly as it relates to equal protection attacks as in the recent decision by this court in *Arnesano*. The courts have generally reasoned that damage limitation statutes have withstood constitutional attacks as a denial of redress or impairment of rights, as such rights in the past have not existed at all since governments have enjoyed immunity from liability.

In more recent legal history as these cases have progressed, there has been a tendency to liberally construe the statutes passed by the state legislature; and the greater the harm and inequities by government, the greater the tendency to judicially legislate around the statutory caps. By any standards of equity, limiting governmental liability appears to be patently unfair in cases where the wrongs and injuries are great compared to the limits. Taking an overall view of tort immunity, it must be remembered that almost total governmental immunity has been retained in large part for the judicial and legislative branches of government in carrying out their functions in those branches of government. In addition, most states protect agents of the executive branch from liability for discretionary acts.

Although almost all jurisdictions have given up total govern-

mental immunity, there is a myriad of legislative schemes which have been used by state legislatures to limit immunity. In some jurisdictions, various statutory schemes have been adopted in an attempt to provide full relief to victims of government tortfeasors by petition to appropriate legislative bodies, recovery from individual public officers or employees and contribution from private joint tortfeasors.

Throughout the United States, there appear to be three types of standards in governmental immunity cases for measuring awards for multiple plaintiffs or claims as follows:[2]

> 1. The "per incident or occurrence" standard—This standard uses a maximum aggregate recovery by law for a single tortious act, regardless of the number of plaintiffs, claims or defendants involved.
> 2. The "per person or per claimant" standard—Permits an award of damages up to the statutory cap for each person having a valid claim against a governmental tortfeasor. Some jurisdictions further limit this per claimant or per person standard to an aggregate damages award by incident or occurrence.
> 3. The "per claim" standard—Under such a standard the statutory cap limit is applicable to each cause of action asserted by each victim or governmental wrongdoing against each government defendant.

At issue in this case is the interpretation of NRS 41.031, wherein the State of Nevada waives its immunity and NRS 41.035, which states the limitation on the award for damages.

This court has interpreted the statutory limitation in NRS 41.035 to apply to each cause of action by each claimant. In State v. Webster, 88 Nev. 690, 691, 504 P.2d 1316, 1319 (1972), this court held that the state was negligent for failing to install a cattle guard at the entrance to a controlled-access freeway. As a result of this failure, plaintiff's automobile crashed into a horse which was wandering on the highway at night. The wife brought an action for both her own injuries and for the wrongful death of her husband. This court ruled that the wife was entitled to recover $25,000 for the wrongful death of her husband, as well as $17,725.84 for the personal injury damages she personally suffered as a result of the accident. In addition, three relatives of the decedent were allowed to recover $25,000 each on their wrongful death claims. This court stated:

---

[2]These standards are discussed in some detail in the article, James L. Isham, J.D., Annotation, *Validity and Construction of Statute or Ordinance Limiting the Kinds or Amount of Actual Damages Recoverable in Tort Action Against Governmental Unit,* 43 A.L.R. 4th 19 (1986).

> Although joined in one complaint, an action for wrongful death and an action for personal injuries suffered by the plaintiff in the same accident are separate, distinct and independent. . . . They rest on different facts and may be separately maintained.

*Id.* at 695, 504 P.2d at 1320 (citations omitted). Thus, this court allowed plaintiffs to recover damages against the state on a per person per claim basis.

In State v. Eaton, 101 Nev. 705, 708, 710 P.2d 1370, 1373 (1985), this court ruled that the state could be held liable for failure to warn motorists of known icy road conditions. As a result of this failure, a husband driving a vehicle over Golconda Summit ran into the back of a semi-truck. Within the vehicle were his wife and baby in the front seat. The collision caused the wife to dislocate her ankle and crushed the baby between the mother and the dashboard. The baby died of head injuries. The mother, believing the baby to be asleep, handed the child through the window to a highway patrolman. The mother later heard the father screaming that the baby was dead.

In the *Eaton* case, this court allowed claims against the state for the mother's personal injury, the wrongful death of the baby and a claim for the mother's emotional distress.

In Falline v. GNLV Corp., 107 Nev. 1004, 1012, 823 P.2d 888, 893-94 (1991), this court held that SIIS, its officers and employees enjoy the benefit of a $50,000 recovery limit provided by NRS 41.035(1). The court stated further that any action seeking tort damages against a self-insured employer or its administrator/agent shall also be subject to a total recovery limit of $50,000, exclusive of interest computed from the date of judgment. *Id.* This opinion appears to limit a plaintiff's recovery to a total of $50,000 regardless of how many government actors are tortfeasors.

In Arnesano v. State, Dep't Transp., 113 Nev. 815, 942 P.2d 139 (1997), a pickup truck struck the rear of Arnesano's Ford causing it to spin out of control on the freeway. Although the impact was minor, the driver's side of the Ford ultimately crashed into a concrete post three feet in diameter, located 16 feet off the paved portion of the freeway. Arnesano died at the scene from severe head trauma. The American Association of State Highway Engineers guide states that solid, non-movable objects within 30 feet of the traveled roadway should be protected by a barrier such as a guardrail, concrete "Jersey" barrier, or crash cushions.

The state argued that the district court erred in denying its motion to dismiss because there was no evidence to show that it caused the fatal accident. The state contended that striking the support post was not legally foreseeable. The state argued that the

proximate cause of the accident was the impact of the pickup truck to the rear of Arnesano's Ford. Regarding liability, this court ruled:

> "One whose tortious conduct is otherwise one of the legal causes of an injurious result is not relieved from liability for the entire harm by the fact that the tortious act of another responsible person contributes to the result." Restatement (Second) of Torts § 879 cmt. a (1965). Accordingly, we conclude that the State is not relieved from liability by the fact that the accident was initially triggered by the impact of the pickup.
>
> "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm." Restatement (Second) of Torts § 431. Trial testimony indicates that safety barriers would have reduced or prevented the impact of the Ford against the support post. We conclude that striking the support post was legally foreseeable, and that substantial evidence supports the jury's finding that the State's failure to install such barriers was a legal cause of Arnesano's death.

*Id.* at 822-23, 942 P.2d at 144.

Based on this analysis, this court affirmed the district court's award of damages of $50,000 each for Arnesano's wife and two children. Their claims were based on the wrongful death of Arnesano. Thus, this court permitted damages under NRS 41.035(1) on a per person per claim basis for a total award of $150,000, exclusive of attorneys fees and costs.

Based on the legal precedent in this state, it appears that this court, in construing NRS 41.035, has consistently allowed plaintiffs to recover damages on a per person per claim basis. This interpretation is consistent with the legislative intent as well as the clear reading of NRS 41.035(1), which uses the phrases "in an action" (singular), as well as the phrase "arising out of an act or omission" (again singular). Neither the ambiguous language of NRS 41.031 and NRS 41.035, nor the conflicting public policy considerations are compelling on the issue of whether plaintiffs can recover statutory damage limitations from multiple government actors. Furthermore, no direct evidence exists to suggest that the legislature ever considered this issue. In view of these facts and this court's custom of practicing judicial restraint in the absence of clear legislative guidance, this court reverses the decision of the district court and concludes that NRS 41.035 allows one statutory limitation for each cause of action, regardless of the

number of actors. *See generally* Goldstine v. Jensen Pre-Cast, 102 Nev. 630, 631, 729 P.2d 1355, 1356 (1986). Any substantial "amendments" of the waiver of state tort immunity must be made by the legislature.[3]

SHEARING and YOUNG, JJ., concur.

SPRINGER, C. J., with whom ROSE, J., agrees, dissenting:

We have here two governmental entities, the State of Nevada and the County of Clark. Each is claimed to be tortiously liable to the Upchurch family. Under a statute which the majority concedes to be "ambiguous," I see no reason why each entity should not be held liable to the full extent of the statute.

I would construe the ambiguity in favor of the claimants and read the statute to apply (as alluded to in the majority) on a "per claimant, per wrong, per government actor basis." The statute permits an action to be brought against "any political subdivision." This means to me that one can sue and recover judgment against the state, a county government and a city government, if each has been proven to be independently liable for tortious conduct. Judgment, in such a case, could be awarded against each, and each would have to pay up to the $50,000 statutory limit. I would, therefore, affirm the judgment of the trial court.

---

[3]The Honorable Richard Wagner, Judge of the Sixth Judicial District Court, was designated by the Governor to sit in the place of THE HONORABLE A. WILLIAM MAUPIN, Justice. Nev. Const. art. 6, § 4.