131 Nev., Advance Opinion 80

## IN THE SUPREME COURT OF THE STATE OF NEVADA

STEPHEN TAM, M.D.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
JERRY A. WIESE, DISTRICT JUDGE,
Respondents,
  and
SHERRY CORNELL, INDIVIDUALLY
AND AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF CHARLES
THOMAS CORNELL, JR.; KARLA
CRAWFORD, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF CHARLES THOMAS CORNELL,
JR.; PATRICK N. CHAPIN, AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF CHARLES THOMAS
CORNELL, JR.; AND ALFREDO
HIBBART, PA,
Real Parties in Interest.

No. 66346

FILED

OCT 01 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for writ of mandamus challenging a district court order ruling a statute unconstitutional in a medical malpractice action.

*Petition granted.*

Lewis Brisbois Bisgaard & Smith, LLP, and S. Brent Vogel and Erin E. Jordan, Las Vegas,
for Petitioner.

SUPREME COURT
OF
NEVADA

(O) 1947A

2/8/16: Corrected per letter to publishers. CJ

15-29735

Law Office of Bradley L. Booke and Bradley L. Booke, Las Vegas; Shandor S. Badaruddin, Missoula, Montana,
for Real Parties in Interest Sherry Cornell, Karla Crawford, and Patrick N. Chapin.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody and Robert C. McBride, Las Vegas,
for Real Party in Interest Alfredo Hibbart.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

NRS 41A.035 (2004) limits the recovery of a plaintiff's noneconomic damages in a health-care provider's professional negligence action to $350,000. In this petition, we resolve three issues related to this statute: whether the statute violates a plaintiff's right to trial by jury, whether the cap applies separately to each cause of action, and whether the statute applies to medical malpractice actions. We conclude that the district court erred in finding the statute unconstitutional on the basis that it violates a plaintiff's constitutional right to trial by jury. We further conclude that the district court erred when it found the statutory cap applies per plaintiff and per defendant. And finally, we conclude that the district court erred when it found the statute only applies to professional negligence and not to medical malpractice. Accordingly, we grant the petition.

## FACTS

After the death of Charles Thomas Cornell, Jr., real party in interest Sherry Cornell,[1] individually and as administrator of Charles's estate, filed a complaint alleging, among other causes of actions, professional negligence and medical malpractice. The complaint named numerous defendants, including petitioner Stephen Tam, M.D.

Charles had several chronic medical conditions. However, Cornell alleged that Charles died after receiving care from the defendants, who discharged him without medications or prescriptions for essential medications, including insulin, to treat his diabetes. Consequently, the complaint alleged that Charles died because he did not have access to insulin.

The district court dismissed several of the defendants and numerous claims from the action, and the remaining claims for trial fell "within the definition of medical malpractice as set forth in NRS 41A.009." Relevant to this opinion is that Dr. Tam filed an omnibus motion in limine requesting in part that the plaintiffs' noneconomic damages be limited to $350,000 as a whole pursuant to NRS 41A.035 (2004).

The district court denied this motion finding that NRS 41A.035 was unconstitutional, as it violated a plaintiff's constitutional right to trial by jury. The district court also found that the cap in NRS 41A.035 does not apply to the case as a whole but that a separate cap

---

[1]Although Charles Cornell, Jr., died in 2010, all references to the plaintiffs/real parties in interest, whether suing on Charles Cornell's behalf or in their individual capacity, are hereinafter referred to collectively as "Cornell."

applies to each plaintiff for each of the defendants.[2]   In addition, the district court found that the cap in NRS 41A.035 did not apply to medical malpractice claims.[3]  This petition for writ relief followed.

*Writ relief is appropriate*

Dr. Tam petitions this court for a writ of mandamus compelling the district court to vacate its order denying his motion in limine.  "'A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion.'" *Humphries v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 85, 312 P.3d 484, 486 (2013) (quoting *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008)); NRS 34.160. Generally, "[w]rit relief is not available . . . when an adequate and speedy legal remedy exists." *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. "While an appeal generally constitutes an adequate and speedy remedy precluding writ relief, we have, nonetheless, exercised our discretion to

---

[2]The Legislature has since amended NRS 41A.035 to clarify that the recovery for noneconomic damages is limited to $350,000, "regardless of the number of plaintiffs, defendants or theories upon which liability may be based."  *See* 2015 Nev. Stat., ch. 439, § 3, at 2526.  All further references to NRS 41A.035 in this opinion are based on the 2004 version of the statute.

[3]As part of his motion in limine, Dr. Tam also requested that he be allowed to introduce collateral source evidence pursuant to NRS 42.021. The district court denied this request, deeming NRS 42.021 unconstitutional.  Dr. Tam separately petitioned this court for a writ of mandamus on this denial.  *Tam v. Eighth Judicial District Court (Cornell)*, Docket No. 66065.  We resolve Docket No. 66065 separately from the petition now before the court.

intervene 'under circumstances of urgency or strong necessity, or when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition.'" *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008) (footnote omitted) (quoting *State v. Second Judicial Dist. Court*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002)).

In this case, although an appeal from a final judgment appears to be an adequate and speedy remedy for the individual parties, resolving this writ petition could affect the course of the litigation and thus promote sound judicial economy and administration. Moreover, this petition raises an important legal issue in need of clarification involving public policy, which could resolve or mitigate related or future litigation. Accordingly, we exercise our discretion to entertain Dr. Tam's petition for writ of mandamus.

*The district court erred in finding NRS 41A.035 unconstitutional, as the statute does not violate the right of trial by jury*

NRS 41A.035 provides that "[i]n an action for injury or death against a provider of health care based upon professional negligence, the injured plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000." The district court concluded that the statute violates the right of trial by jury because it takes a question of fact—the determination of damages—away from the jury.

"[T]his court reviews de novo determinations of whether a statute is constitutional." *Hernandez v. Bennett-Haron*, 128 Nev., Adv. Op. 54, 287 P.3d 305, 310 (2012). "Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional. In order to meet that burden, the challenger must make

a clear showing of invalidity." *Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006) (citation omitted).

In Nevada, "[t]he right of trial by Jury shall be secured to all and remain inviolate forever." Nev. Const. art. 1, § 3. This provision guarantees "the right to have factual issues determined by a jury." *Drummond v. Mid-West Growers Coop. Corp.*, 91 Nev. 698, 711, 542 P.2d 198, 207 (1975).

In order for a statute to violate the right to trial by jury, a statute must make the right practically unavailable. *Barrett v. Baird*, 111 Nev. 1496, 1502, 908 P.2d 689, 694 (1995) ("[T]he correct standard for evaluating whether a statute unconstitutionally restricts the right to a jury trial is that the right must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable." (internal quotations omitted)), *overruled on other grounds by Lioce v. Cohen*, 124 Nev. 1, 17, 174 P.3d 970, 980 (2008).

While jurisdictions disagree on whether caps on statutory damages violate the right to trial by jury,[4] we have previously held that a statutory limit on damages *does not* infringe upon a plaintiff's constitutional right. *Arnesano v. State, Dep't of Transp.*, 113 Nev. 815, 819, 942 P.2d 139, 142 (1997), *abrogated on other grounds by Martinez v.*

---

[4]*Compare Boyd v. Bulala*, 877 F.2d 1191, 1196 (4th Cir. 1989) ("[O]nce the jury has made its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law."), *with Lakin v. Senco Prods., Inc.*, 987 P.2d 463, 473 (Or. 1999) ("Although it is true that [the statutory cap] does not prohibit a jury from assessing noneconomic damages, to the extent that the jury's award exceeds the statutory cap, the statute prevents the jury's award from having its full and intended effect.").

*Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007). In *Arnesano*, the plaintiffs contended that a $50,000 cap on damages under NRS 41.035 (limiting damages in a tort action against the government) violated their right to a jury trial. *Id.* at 819-20, 942 P.2d at 142. After explaining that it is the jury's role to determine the extent of a plaintiff's injury, this court concluded that "'it is not the role of the jury to determine the legal consequences of its factual findings. . . . That is a matter for the [L]egislature.'" *Id.* at 820, 942 P.2d at 142 (quoting *Boyd v. Bulala*, 877 F.2d 1191, 1196 (4th Cir. 1989) (first alteration in original) (upholding a statutory cap on medical malpractice liability)).

California has also addressed this exact issue in upholding the constitutionality of its statutory cap on noneconomic damages in an action involving a health-care provider's professional negligence. *See Yates v. Pollock*, 239 Cal. Rptr. 383, 385 (Ct. App. 1987) (concluding that such an argument is merely "an indirect attack upon the Legislature's power to place a cap on damages"). The *Yates* court reasoned that while the statute could possibly result in a lower judgment than the jury's award, "the Legislature retains broad control over the measure . . . of damages that a defendant is obligated to pay and a plaintiff is entitled to receive, and . . . [it] may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest." *Id.* at 385-86 (internal quotations omitted) (third alteration in original).

Consistent with our prior holding in *Arensano* and persuasive caselaw from California, we conclude that NRS 41A.035's cap does not interfere with the jury's factual findings because it takes effect only after the jury has made its assessment of damages, and thus, it does not implicate a plaintiff's right to a jury trial.

*NRS 41A.035 does not violate equal protection rights*

Cornell also argues that the district court correctly found the statute unconstitutional but for the wrong reasons. Cornell argues that NRS 41A.035 violates the Equal Protection Clause and claims there is no rational basis for the statute. The district court did not address the equal protection argument in its order. Although this court would not normally address an issue that the district court declined to consider and develop the factual record, this court can consider constitutional issues for the first time on appeal. *See Jacobs v. Adelson*, 130 Nev., Adv. Op. 44, 325 P.3d 1282, 1288 (2014); *Barrett*, 111 Nev. at 1500, 908 P.2d at 693 (holding that this court may consider constitutional issues for the first time on appeal).

To survive an equal protection challenge, NRS 41A.035 need only be rationally related to a legitimate governmental purpose.[5] *See generally Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 520, 217 P.3d 546, 559 (2009). "[T]he right of malpractice plaintiffs to sue for damages caused by medical professionals does not involve a fundamental constitutional right." *Barrett*, 111 Nev. at 1507, 908 P.2d at 697.

The argument presented to voters in support of passing NRS 41A.035 was to "stabilize Nevada's health care crisis and provide protection for both doctors and patients." *Nevada Ballot Questions 2004*, Question No. 3, Argument in Support of Question No. 3 at 16, *available at* https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/

---

[5]While the legislative history is helpful to understanding the purpose of enacting the statute, this court is not limited to the reasons expressed by the Legislature; rather, if any rational basis exists, or can be hypothesized, then the statute is constitutional. *See Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 520, 217 P.3d 546, 559 (2009).

2004.pdf 2004 (last visited July 10, 2015). Based on this express goal, NRS 41A.035's aggregate cap on noneconomic damages is rationally related to the legitimate governmental interest of ensuring that adequate and affordable health care is available to Nevada's citizens. By providing a hard cap limiting potential noneconomic damages arising from an incident of malpractice, the statute would seem to provide greater predictability and reduce costs for health-care insurers and, consequently, providers and patients.

Similarly, the California Supreme Court determined that California's statutory cap on noneconomic damages does not violate equal protection. *See Fein v. Permanente Med. Grp.*, 695 P.2d 665, 680 (Cal. 1985). Specifically, the *Fein* court explained that an aggregate cap on medical malpractice damages was rationally related to the legitimate governmental purpose of combating "the rising cost of medical malpractice insurance [that] was posing serious problems for the health care system in California." *Id.*; *see also Hoffman v. United States*, 767 F.2d 1431, 1437 (9th Cir. 1985) (same).

Thus, we conclude that NRS 41A.035 does not violate equal protection because the imposition of an aggregate cap on noneconomic damages in medical malpractice actions is rationally related to the legitimate governmental interests of ensuring that adequate and affordable health care is available to Nevada's citizens.

*The district court erred when it found the cap in NRS 41A.035 applies per plaintiff, per defendant*

Cornell argues that the district court properly found that the plain language and legislative history of NRS 41A.035 support the argument that its cap applies separately to each plaintiff for each defendant, as each plaintiff has an independent action. Cornell compares

this statute with the wrongful death statute where heirs' actions may be joined, and each action is separate and distinct.[6] We disagree.

NRS 41A.035 provides that "[i]n an action for injury or death against a provider of health care based upon professional negligence, the injured plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000." Cornell argues that the term "action" refers to each separate claim and applies separately to each defendant. Conversely, Dr. Tam argues that the plain meaning of "action" refers to the case as a whole. Because both interpretations are reasonable, the statute is ambiguous, and we look to the legislative history to aid in interpreting the statute.

We review de novo questions of statutory construction. *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court,* 120 Nev. 575, 579, 97 P.3d 1132, 1135 (2004). We do not look beyond the language of a statute if it is clear on its face. *Id.* at 579-80, 97 P.3d at 1135. "However, when a statute is susceptible to more than one natural or honest interpretation, it is ambiguous, and the plain meaning rule has no application." *Id.* (internal citations omitted). "In construing an ambiguous statute, we must give the

---

[6]Incorrectly, Cornell also cites to *County of Clark ex rel. University Medical Center v. Upchurch,* 114 Nev. 749, 961 P.2d 754 (1998), as evidence that NRS 41A.035 applies per plaintiff, per defendant, and per cause of action. In *Upchurch,* we determined that a $50,000 governmental immunity waiver and damage cap pursuant to NRS 41.035(1) was ambiguous as to whether the cap was per political subdivision or aggregate "regardless of the number of defendant political subdivisions." 114 Nev. at 754, 961 P.2d at 758. However, after examining legislative history and related caselaw, we ultimately held that "NRS 41.035 allows one statutory limitation for each cause of action, *regardless of the number of actors.*" *Id.* at 754-60, 961 P.2d at 758-61 (emphasis added).

statute the interpretation that reason and public policy would indicate the legislature intended." *Id.* (internal citations omitted).

In repealing NRS 41A.031(3)(a), which limited "the noneconomic damages awarded *to each plaintiff from each defendant,*" the 2004 amendments to NRS Chapter 41A adopted instead NRS 41A.035, which limits "the amount of noneconomic damages awarded *in such an action.*" (Emphases added.) Such an alteration suggests that noneconomic damages are restricted to a per-incident basis. *See McKay v. Bd. of Supervisors of Carson City,* 102 Nev. 644, 650, 730 P.2d 438, 442 (1986) ("It is ordinarily presumed that the [L]egislature, by deleting an express portion of a law, intended a substantial change in the law.").

Particularly helpful is legislative history prior to the 2004 Ballot Question Number 3 that resulted in the addition of NRS 41A.035, which indicated that the aggregate cap was per incident, with no exceptions. *See* Hearing on S.B. 97 Before the Senate Judiciary Comm., 72d Leg. (Nev., March 24, 2003) (testimony of Jack Meyer, The Doctors Company, at 25). The legislative history also discusses a comparison between Nevada's statute and California's analogous statute, noting that the cap in NRS 41A.035 is similarly "per incident, not per claimant, and not per doctor." *Id.* at 10. Additionally, the official explanation to Question No. 3 stated that the previous statute provided that "a person seeking damages in a medical malpractice action is limited to recovering $350,000 in noneconomic damages *from each defendant* . . . . The proposal, if passed, would . . . limit the recovery of noneconomic damages to $350,000 *per action.*" *Nevada Ballot Questions 2004,* Question No. 3, Explanation at 14 (emphases added) *available*



*at* https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/ 2004.pdf 2004 (last visited July 29, 2015).

The intent behind the statute is further evinced by the Legislature's discussion of recent amendments to NRS 41A.035, indicating that the purpose of the 2004 amendments was to clarify that the cap for noneconomic damages is intended to apply per action. *See* Hearing on S.B. 292 Before the Senate Judiciary Comm., 78th Leg. (Nev., March 26, 2015) (statement of John Cotton, Keep Our Doctors in Nevada, at 14).

Based on the foregoing, we conclude that the noneconomic damages cap in NRS 41A.035 applies per incident, regardless of how many plaintiffs, defendants, or claims are involved. Thus, the district court erred in denying the portion of Dr. Tam's motion in limine requesting that the plaintiffs' noneconomic damages be limited to $350,000 as a whole pursuant to NRS 41A.035.

*The district court erred when it found NRS 41A.035 only applies to claims of professional negligence and not to medical malpractice*

The district court found that NRS 41A.035 only applies to "professional negligence" claims and not to "medical malpractice" claims. Citing this court's opinion in *Egan v. Chambers*, 129 Nev., Adv. Op. 25, 299 P.3d 364 (2013), the district court explained that the terms were essentially mutually exclusive. Dr. Tam argues that professional negligence is broader and includes medical malpractice. Dr. Tam additionally argues that NRS 41A.035 applies because under the statutory definitions, he is a physician, and physicians are covered under professional negligence. Cornell argues that her claims are based on

medical malpractice, which is distinct from professional negligence, and following *Egan*'s logic, the statute does not apply.[7]

NRS 41A.035 applies "[i]n an action for injury or death against a provider of health care based upon professional negligence." Under the then-existing statutes, "[p]rofessional negligence" was defined as a "negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." NRS 41A.015. A "[p]rovider of health care" included a "physician licensed under chapter 630 or 633 of NRS." NRS 41A.017 (2011). NRS 41A.013 defined "[p]hysician [as] a person licensed pursuant to chapter 630 or 633 of NRS," and NRS 630.014 defines "[p]hysician [as] a person who has complied with all the requirements of [NRS Chapter 630] for the practice of medicine." It is clear that Dr. Tam is a physician as defined by NRS 630.014.

What is unclear from our reading of the statutes is the relationship between professional negligence and medical malpractice.[8] NRS 41A.009 (1989) defined "[m]edical malpractice [as] the failure of a

---

[7]Curiously, Cornell labeled her claim against Dr. Tam as "professional negligence," however, the district court did not address this distinction as the court determined that NRS 41A.035 was unconstitutional.

[8]The Legislature has since clarified this confusion by striking the term "medical malpractice" in NRS Chapter 41A and replacing those references with the term "professional negligence." *See* 2015 Nev. Stat., ch. 439, §§ 1.5, 2, 5, 6, 7, 10, at 2526-28. The Legislature has also repealed NRS 41A.009 and 41A.013, and provided a new definition for professional negligence under NRS 41A.015, incorporating provisions of the previously used definition of medical malpractice. *Id.* at § 12, at 2529.

physician, hospital or employee of a hospital, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances." Although not identical, the definitions for both professional negligence and medical malpractice are similar and ultimately include negligence by a physician.[9] Moreover, while the definition of medical malpractice is narrower in scope, the definition of professional negligence encompasses almost all of the medical malpractice definition.[10]

This ambiguity is expounded when taking into account the legislative history of these statutes. In 2004, Nevada voters were presented with and approved Question No. 3, the Keep Our Doctors in Nevada initiative, which added NRS 41A.035 to the state's statutes. The initiative was explained to the voters as follows, using professional negligence and medical malpractice interchangeably:

---

[9]This court made a similar observation in *Fierle v. Perez*, 125 Nev. 728, 737, 219 P.3d 906, 912 (2009), *overruled on other grounds by Egan v. Chambers*, 129 Nev., Adv. Op. 25, 299 P.3d 364, 365 (2013):

> Initially, we note that the definition for professional negligence that was added in 2004 (NRS 41A.015) essentially duplicates the definition for medical malpractice contained in NRS 41A.009. As such, it is not clear whether the references to medical malpractice in NRS Chapter 41A encompass the almost identically defined professional negligence.

[10]"Medical malpractice" includes the broader term "hospital," while "[p]rovider of health care" uses the term "licensed hospital." *See* NRS 41A.009 (1989), NRS 41A.015. Thus, with the exception of an unlicensed hospital, provider of health care is broader than medical malpractice, such that it encompasses medical malpractice.

SUPREME COURT
OF
NEVADA

(O) 1947A

> If passed, the proposal would limit the fees an attorney could charge a person seeking damages against a negligent provider of health care in a *medical malpractice* action. *Professional negligence* means a negligent act, or omission to act, by a provider of health care that is the proximate cause of a personal injury or wrongful death. . . .
>
> The law currently provides that a person seeking damages in a *medical malpractice* action is limited to recovering $350,000 in noneconomic damages from each defendant. . . .
>
> Currently, damages that an injured person is allowed to recover in a *medical malpractice* action may be reduced by benefits the person received from a third party. . . .

*Nevada Ballot Questions 2004*, Question No. 3, Explanation at 14 (emphasis added), *available at* https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/2004.pdf (last visited July 29, 2015). Similarly, the legislative history prior to the voter initiative indicates that the statute would apply to medical malpractice actions, and the discussion surrounding the proposed legislation further conflated the terms:

> Nevada's initiative petition defines *professional negligence* as being the "act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." In other words, in a *medical malpractice* case the alleged negligent act must have actually contributed to the injury or the death of a patient. This is logical, it seems appropriate, and it works well in other states.

Hearing on S.B. 97 Before the Senate Judiciary Comm., 72d Leg. (Nev., March 5, 2003) (testimony of Dr. Robert W. Shreck, President, Nevada Medical Association) (emphases added).

Here, the district court relied on *Egan* for the proposition that medical malpractice and professional negligence are essentially mutually exclusive. In *Egan*, we held that NRS 41A.071, which requires an affidavit of merit in medical malpractice claims, applied only to medical malpractice actions, thus partly overruling a previous decision that applied the statute to professional negligence actions as well. 129 Nev., Adv. Op. 25, 299 P.3d at 365. NRS 41A.071 did not mention "professional negligence," only "medical malpractice and dental malpractice," so this court turned to the statutory definitions of medical malpractice. *Id.* at 367. Because medical malpractice only encompasses claims against physicians licensed pursuant to NRS Chapters 630 and 633, and podiatrists were licensed under NRS Chapter 635, this court determined that a negligence action against a podiatrist, while professional negligence, was outside the purview of medical malpractice. *Id.*

To the contrary, NRS 41A.035 applies to *professional negligence* claims, which by definition of NRS 41A.015 applies to "a provider of health care," and includes physicians licensed pursuant to NRS Chapters 630 and 633. NRS 41A.017. Thus, construing the statutes in harmony and consistent with what reason and public policy suggest the Legislature intended, we conclude that medical malpractice is incorporated into professional negligence, making NRS 41A.035 applicable to medical malpractice actions. Accordingly, we further conclude that the district court erred when it found that NRS 41A.035 only applies to professional negligence claims and not to medical malpractice claims.

## CONCLUSION

Based on our analysis, we conclude that the district court erred in finding NRS 41A.035 unconstitutional. We further conclude that

Supreme Court
OF
Nevaoa

(O) 1947A

the district court erred when it found NRS 41A.035's cap for noneconomic damages applies per plaintiff and per defendant. Finally, we conclude that the district court erred when it found that NRS 41A.035 did not apply to claims for medical malpractice. We therefore grant Dr. Tam's petition and instruct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order and to conduct further proceedings consistent with this opinion.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A